A. SASHA FRID (State Bar No. 216800)
sfrid@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 552-4400
Facsimile:     (310) 552-8400

Attorneys for Defendants
PAUL ROTHENBERG and ROTHENBERG, P.C.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TODD MANDEL, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>HOLLY HAFERMANN, doing business as SKYLAR GREY; VANESSA OSTOVICH; ELLIOTT TAYLOR; PAUL ROTHENBERG; and ROTHENBERG PC,<br><br>                    Defendants. | **CASE NO. 3:20-cv-03668-JSC**<br><br>**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO C.C.P. § 425.16; AND REQUEST FOR ATTORNEYS' FEES AND COSTS (C.C.P. § 425.16(c)(1))**<br><br>*[Filed Concurrently with Declaration of Paul Rothenberg; Request for Judicial Notice; and [Proposed] Order]*<br><br>Date:        August 13, 2020<br>Time:        9:00 a.m.<br>Ctrm.:       E<br><br>Assigned for All Purposes to Magistrate Judge Jacqueline Scott Corley, Ctrm. E |

*Sidebar (left margin):* MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

463738.4

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 13, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom E of the United States District Court for the Northern District of California, located at Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Paul Rothenberg and Rothenberg, P.C. (together, "Rothenberg Defendants") will, and hereby do, move this Court, pursuant to California Code of Civil Procedure section 425.16, for an order striking the First, Second, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twentieth Causes of Action against them in the First Amended Complaint filed by Plaintiff Todd Mandel ("Plaintiff"), and striking the allegations on which the claims are based.

Section 425.16—known as the "anti-SLAPP" statute—is a means to quickly dispose of causes of action arising from a defendant's exercise of his or her constitutional right to petition for redress of grievances.  The anti-SLAPP statute can be used against state law claims asserted in federal court.  *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam).  The anti-SLAPP analysis is a two-prong inquiry: (1) the defendant(s) must show that the claims arise from protected activity; and (2) the burden then shifts to the plaintiff to produce admissible evidence to demonstrate a probability of prevailing on the merits of the claims.  *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016).

Here, the alleged conduct and communications in support of all eight claims against the Rothenberg Defendants—defamation, false light, breach of contract, breach of fiduciary duty, intentional interference with economic relations, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy—constitute protected litigation activity and fall squarely under section 425.16(e)(2): "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law."

Moreover, the alleged conduct and communications in support of the defamation, false light, breach of contract, and breach of fiduciary claims constitute protected speech in connection with a public issue and fall squarely under section 425.16(e)(3) and (4): "(3) any written or oral

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; and "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with . . . an issue of public interest."

Because the challenged claims arise from protected activity, the burden shifts to Plaintiff to demonstrate a probability of prevailing on his claims.  The claims are all predicated on alleged conduct that is protected by the litigation privilege under California Civil Code section 47(b).  Rothenberg's legal advice is absolutely privileged; and providing notice of a public court filing to news outlets is "connected" and "logically related" to a judicial action is also privileged.

The defamation, false light, breach of contract, and breach of fiduciary duty claims are also predicated on alleged conduct that is protected by the fair reporting privilege under California Civil Code section 47(d).  Plaintiff cannot demonstrate probable success to satisfy the second prong of the anti-SLAPP inquiry, and therefore the claims against the Rothenberg Defendants should be stricken.

Pursuant to section 425.16(c)(1), the Rothenberg Defendants are entitled to recover the attorneys' fees and costs incurred in connection with the Motion.

The Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Paul Rothenberg, the Request for Judicial Notice and exhibits thereto, all pleadings and papers on file in this action, any oral argument the Court may entertain on the Motion, and any other matter the Court deems just and proper.

DATED:  July 2, 2020

Respectfully Submitted,

MILLER BARONDESS, LLP

By: _____

A. SASHA FRID
Attorneys for Defendants
PAUL ROTHENBERG and ROTHENBERG, P.C.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

3

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

1

2

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................. 4

        A.     Rothenberg's Representation Of Hafermann ........................................... 4

        B.     The Divorce Proceedings ......................................................................... 4

        C.     The TRO Proceedings And Press Coverage ............................................ 5

        D.     Mandel's Allegations In The FAC ........................................................... 6

III.    PROCEDURAL HISTORY/CHOICE OF LAW ............................................... 8

IV.     LEGAL STANDARD ......................................................................................... 9

V.      PRONG ONE: THE CLAIMS ARISE FROM PROTECTED
        ACTIVITY ........................................................................................................ 10

        A.     All Of Mandel's Claims Arise From Protected Litigation
               Activity .................................................................................................... 11

               1.      Rothenberg's Alleged Legal Advice to Hafermann .................. 11

               2.      Rothenberg's Alleged Statements to News Outlets ................... 12

        B.     The First, Second, Fifteenth And Sixteenth Causes Of Action
               Arise From Speech In Connection With A Public Issue ......................... 13

VI.     PRONG TWO: PLAINTIFF CANNOT ESTABLISH A
        PROBABILITY OF PREVAILING ON ANY OF HIS FRIVOLOUS
        CLAIMS ............................................................................................................ 14

        A.     Mandel Cannot Present "Competent, Admissible Evidence" Of
               Rothenberg's Advice To His Client ........................................................ 14

        B.     The Litigation Privilege Bars All Of Mandel's Claims ......................... 14

        C.     The Fair Reporting Privilege Bars The First, Second, Fifteenth,
               And Sixteenth Causes Of Action ........................................................... 16

        D.     The Fifteenth And Sixteenth Causes Of Action Fail For
               Additional Reasons ................................................................................. 17

        E.     Mandel's Interference Claim Is Legally Defective ................................ 18

               1.      Rothenberg's Advice to His Client Cannot Be a Basis for
                       Intentional Interference .............................................................. 19

               2.      Mandel Cannot Show Rothenberg's Conduct Was
                       "Independently Wrongful" ......................................................... 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

F.  Mandel's Infliction Of Emotional Distress Claims Fails ..................... 20

G.  Mandel's Negligent Infliction Of Emotional Distress Claim Fails ...... 21

H.  Conspiracy Is Not An Independent Cause Of Action........................... 22

VII.  CONCLUSION ............................................................................................. 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Barragan v. Deutsche Bank Nat'l Tr. Co.,*
No. CV 15-02614 DDP (FFMx), 2015 WL 3617104 (C.D. Cal. June 9,
2015) ............................................................................................................. 18

*CRS Recovery, Inc. v. Laxton,*
600 F.3d 1138 (9th Cir. 2010) ...................................................................... 8

*Flores v. Emerich & Fike,*
416 F. Supp. 2d 885 (E.D. Cal. 2006) ........................................................ 15

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010) ...................................................................... 13

*L.A. Airways, Inc. v. Davis,*
687 F.2d 321 (9th Cir. 1982) ...................................................................... 19

*O'Brien v. Alexander,*
898 F. Supp. 162 (S.D.N.Y. 1995),
*aff'd,* 101 F.3d 1479 (2d Cir. 1996) ........................................................... 15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress,*
890 F.3d 828 (9th Cir. 2018) ........................................................................ 9

*Thomas v. Fry's Elecs., Inc.,*
400 F.3d 1206 (9th Cir. 2005) ...................................................................... 9

*Traverso v. Eller Media Co.,*
No. C 97-1254 SI, 2002 WL 467717 (N.D. Cal. Mar. 25, 2002) ............... 18

*United States v. Bauer,*
132 F.3d 504 (9th Cir. 1997) ...................................................................... 14

*United States v. Mett,*
178 F.3d 1058 (9th Cir. 1999) .................................................................... 14

*Wang & Wang LLP v. Banco Do Brasil S.A.,*
No. 2:06-CV-00761-JAM-KJM, 2009 WL 530135 (E.D. Cal. Mar. 3,
2009) ............................................................................................................. 17

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) .................................................................. 8, 9

**STATE CASES**

*1-800 Contacts, Inc. v. Steinberg,*
107 Cal. App. 4th 568 (2003) ...................................................................... 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)..................................................................................22

*Argentieri v. Zuckerberg*,
   8 Cal. App. 5th 768 (2017)........................................................................17

*Bergstein v. Stroock & Stroock & Lavan LLP*,
   236 Cal. App. 4th 793 (2015)....................................................................15

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007)..................................................................18

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1999)............................................................................12

*Burgess v. Superior Court*,
   2 Cal. 4th 1064 (1992)..............................................................................21

*Cabral v. Martins*,
   177 Cal. App. 4th 471 (2009)....................................................................12

*CDF Firefighters v. Maldonado*,
   158 Cal. App. 4th 1226 (2008)..................................................................17

*Chavez v. Mendoza*,
   94 Cal. App. 4th 1083 (2001)....................................................................10

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991)...............................................................................22

*Cochran v. Cochran*,
   65 Cal. App. 4th 488 (1998)......................................................................21

*Comstock v. Aber*,
   212 Cal. App. 4th 931 (2012)....................................................................10

*Contemporary Servs. Corp. v. Staff Pro Inc.*,
   152 Cal. App. 4th 1043 (2007)..................................................................20

*Contreras v. Dowling*,
   5 Cal. App. 5th 394 (2016)....................................................................3, 12

*Costa v. Superior Court*,
   157 Cal. App. 3d 673 (1984)......................................................................15

*Davidson v. City of Westminster*,
   32 Cal. 3d 197 (1982)...............................................................................20

*Dean v. Friends of Pine Meadow*,
   21 Cal. App. 5th 91 (2018).........................................................15, 22, 23

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal. App. 4th 777 (1996)......................................................................13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Finton Constr., Inc. v. Bidna & Keys, APLC,*
    238 Cal. App. 4th 200 (2015).................................................................3, 15

*Fox Searchlight Pictures, Inc. v. Paladino,*
    89 Cal. App. 4th 294 (2001)....................................................................10

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,*
    184 Cal. App. 4th 1539 (2010)................................................................13

*Hall v. Time Warner, Inc.,*
    153 Cal. App. 4th 1337 (2007)................................................................13

*Healthsmart Pac., Inc. v. Kabateck,*
    7 Cal. App. 5th 416 (2016)............................................................3, 16, 17

*Healy v. Tuscany Hills Landscape & Recreation Corp.,*
    137 Cal. App. 4th 1 (2006).........................................................13, 15, 16

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP,*
    247 Cal. App. 4th 87 (2016)....................................................................17

*Kenne v. Stennis,*
    230 Cal. App. 4th 953 (2014)............................................................16, 22

*Koo v. Rubio's Rests., Inc.,*
    109 Cal. App. 4th 719 (2003)..................................................................18

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003)...........................................................................20

*Marlene F v. Affiliated Psychiatric Med. Clinic, Inc.,*
    48 Cal. 3d 583 (1989).............................................................................22

*Molien v. Kaiser Found. Hosps.,*
    27 Cal. 3d 916 (1980).............................................................................21

*Navarro v. IHOP Props., Inc.,*
    134 Cal. App. 4th 834 (2005)..................................................................15

*Navellier v. Sletten,*
    106 Cal. App. 4th 763 (2003)..................................................................10

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027 (2008)................................................................13

*Optional Capital, Inc. v. Akin Gump Strauss Hauer & Feld LLP,*
    18 Cal. App. 5th 95 (2017)......................................................................12

*Peper v. Gannett Co., Inc.,*
    No. 2002061753, 2003 WL 22457121 (Cal. Super. Ct. Apr. 4, 2003),
    *aff'd,* No. A102831, 2004 WL 2538839 (Cal. Ct. App. Nov. 10, 2004) ........16

*Phyllis v. Superior Court,*
    183 Cal. App. 3d 1193 (1986)..................................................................22

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993)....................................................................21, 22

*Price v. Armour*,
   949 P.2d 1251 (Utah 1997) ...............................................................15

*Roberts v. L.A. Cty. Bar Ass'n*,
   105 Cal. App. 4th 604 (2003)...........................................................3, 10

*Ross v. Creel Printing & Publ'g Co.*,
   100 Cal. App. 4th 736 (2002)..............................................................21

*Rubin v. Green*,
   4 Cal. 4th 1187 (1993)....................................................................12, 15

*Rusheen v. Cohen*,
   37 Cal. 4th 1048 (2006)........................................................................2

*Salma v. Capon*,
   161 Cal. App. 4th 1275 (2008) ............................................................9

*Schick v. Lerner*,
   193 Cal. App. 3d 1321 (1987) ............................................................19

*Schwarz v. Salt Lake Tribune*,
   No. 20030981-CA, 2005 UT App 206, 2005 WL 1037843 (Utah Ct.
   App. May 5, 2005) .............................................................................16

*Seltzer v. Barnes*,
   182 Cal. App. 4th 953 (2010) .............................................................11

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990), *as modified* (Mar. 12, 1990).....................15, 16

*Simmons v. Allstate Ins. Co.*,
   92 Cal. App. 4th 1068 (2001) .............................................................10

*Thayer v. Kabateck Brown Kellner LLP*,
   207 Cal. App. 4th 141 (2012)...........................................................11, 12

*Unterberger v. Red Bull N. Am., Inc.*,
   162 Cal. App. 4th 414 (2008)..............................................................21

*Washington Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001).........................................................................8

*Wilson v. Parker, Covert & Chidester*,
   28 Cal. 4th 811 (2002), *superseded by statute on other grounds* ...................10

*Yurick v. Superior Court*,
   209 Cal. App. 3d 1116 (1989)..............................................................21

*Zenith Ins. Co. v. O'Connor*,
   148 Cal. App. 4th 998 (2007)...............................................................18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**STATE STATUTES**

Cal. Civ. Code § 47(b) ........................................................................................ 3, 14

Cal. Civ. Code § 47(c) ............................................................................................ 10

Cal. Civ. Code § 47(d) ....................................................................................... 3, 16

Cal. Civ. Proc. Code § 425.16 .............................................................. 10, 11, 23

Cal. Civ. Proc. Code § 425.16(b)(1) ............................................... 1, 9, 10, 14

Cal. Civ. Proc. Code § 425.16(b)(2) ..................................................................... 9

Cal. Civ. Proc. Code § 425.16(c)(1) .................................................................... 10

Cal. Civ. Proc. Code § 425.16(e) .................................................................. 10, 11

Cal. Civ. Proc. Code § 425.16(e)(1) ................................................................... 13

Cal. Civ. Proc. Code § 425.16(e)(2) ................................................... 11, 12, 13

Cal. Civ. Proc. Code § 425.16(e)(3) ................................................................... 13

Cal. Civ. Proc. Code § 425.16(e)(3)-(4) ..................................................... 13, 14

N.Y. Civ. Rights § 74 ............................................................................................ 16

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3     This is a classic SLAPP suit that attempts to drag a lawyer and his law firm into an ugly

4 marital dispute between a former husband and wife.  The causes of action against Defendant Paul

5 Rothenberg and Rothenberg, P.C. (together, "Rothenberg") are based entirely on privileged

6 conduct and should be stricken pursuant to California's anti-SLAPP statute, Code of Civil

7 Procedure section 425.16(b)(1).

8     Rothenberg is an entertainment attorney who has helped launch and oversee the careers of

9 some of today's biggest music artists.  One of his long-time clients is Defendant Holly Hafermann,

10 a singer-songwriter and record producer who goes by the professional name "Skylar Grey."

11     Hafermann was married to Plaintiff Todd Mandel ("Mandel"), who was also her manager

12 during the marriage.  They grew apart, Hafermann filed for divorce and moved on with her new

13 fiancé, defendant Elliott Taylor.  Apparently upset that his marriage was falling apart, Mandel

14 threatened physical violence against Hafermann and admitted to stalking her.  In serious fear for

15 her safety, Hafermann sought emergency protective relief from the Los Angeles Superior Court

16 and was granted a temporary restraining order ("TRO").  Because Hafermann is a public figure,

17 TMZ and other entertainment news outlets reported on the TRO proceedings.  Needless to say,

18 Hafermann also fired Mandel as her manager.

19     During the civil injunction proceedings, the trial judge found Hafermann's testimony about

20 Mandel's threats to be credible and ordered Mandel to stay away from her: "Don't go near her.

21 Don't go near her home.  Don't try to find out where she is living with her fiancé.  Don't call her.

22 Don't have anything to do with her."  (Request for Judicial Notice ("RJN") Ex. E at 21:27-22:2.)

23     Mandel is using the courts to exact revenge for his personal issues.  He sued Hafermann,

24 her assistant, and even her fiancé for ruining his marriage (i.e., alienation of affection).  Then,

25 hoping to gain leverage, and to try to extract money from a professional liability policy, Mandel

26 amended his complaint to add Rothenberg—his ex-wife's lawyer—on a contrived conspiracy

27 theory.

28     Mandel claims that Rothenberg conspired with Hafermann to concoct a false story about

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    Mandel's dangerous behavior; that Rothenberg "directed" Hafermann to file the TRO and

2    wrongfully terminate Mandel as her manager; and that Rothenberg broadcast the TRO proceedings

3    to news outlets.  He is saying that Rothenberg put up his client to file a false TRO in court and that

4    Hafermann made this whole thing up—talk about shaming the victim.

5         This is all nonsense, and has no evidentiary support.  Rothenberg was not involved in the

6    TRO proceedings.  Nor did he report anything to the media.  The First Amended Complaint

7    ("FAC") is also based on the contrived contention that Rothenberg was Mandel's lawyer when, in

8    fact, Rothenberg never represented him in any capacity.

9         Based on these allegations, Mandel brings eight causes of action against Rothenberg:

10   defamation (First Cause of Action); false light (Second Cause of Action); breach of contract

11   (Fifteenth Cause of Action); breach of fiduciary duty (Sixteenth Cause of Action); intentional

12   interference with economic relations (Seventeenth Cause of Action); intentional infliction of

13   emotional distress (Eighteenth Cause of Action); negligent infliction of emotional distress

14   (Nineteenth Cause of Action); and conspiracy (Twentieth Cause of Action).

15        Mandel's claims against Rothenberg boil down to three things: (1) legal advice about

16   initiating the TRO proceeding; (2) notifying news outlets about the TRO proceeding; and (3) legal

17   advice about performing under the divorce settlement.  Essentially, Rothenberg is being sued for

18   representing his client.

19        None of this is true; but assuming it was, Mandel cannot assert any claims for this conduct.

20   Under California law, Mandel's claims are all based on privileged conduct and should be stricken.

21   The alleged conduct underlying the claims constitutes protected activity "in furtherance of

22   [Rothenberg's] right of petition or free speech under the United States Constitution or the

23   California Constitution in connection with a public issue."  The anti-SLAPP statute allows an

24   early substantive challenge to claims based on protected activity.  *Rusheen v. Cohen*, 37 Cal. 4th

25   1048, 1056 (2006).  The SLAPP statute has two prongs:

26        Prong one requires Rothenberg to show that the claims against him "arise from" protected

27   activity.  Mandel's claims are based on paradigmatic protected activity: legal advice to a client and

28   reporting a lawsuit to news outlets.  "[A]ll communicative acts performed by attorneys as part of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    their representation of a client in a judicial proceeding or other petitioning context are per se

2    protected as petitioning activity by the anti-SLAPP statute." *Contreras v. Dowling*, 5 Cal. App.

3    5th 394, 408-09 (2016) (citation omitted).

4           Under prong two, Mandel bears the burden of showing through "competent, admissible

5    evidence" a probability of success on his claims. *Roberts v. L.A. Cty. Bar Ass'n*, 105 Cal. App.

6    4th 604, 613-14 (2003).  He cannot do so.

7           As an initial matter, Mandel cannot put forth any "competent, admissible" evidence that

8    Rothenberg advised Hafermann to do *anything*, because his advice is protected by the attorney-

9    client privilege.  Such evidence is inadmissible.

10          Even if Mandel could produce competent evidence in support of his claims (he cannot), the

11   claims would still fail as a matter of law because they are barred by the litigation privilege.  The

12   litigation privilege in Civil Code section 47(b) is an absolute bar to tort claims based on statements

13   relating to judicial proceedings.  It protects an attorney's legal advice to clients, pre-litigation

14   communications and settlement discussions.  Rothenberg did not advise Hafermann to file the

15   TRO or to breach any agreement with Mandel.  But even if he did, the litigation privilege protects

16   precisely this type of conduct.  "Without the litigation privilege, attorneys would simply be unable

17   to do their jobs properly." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200,

18   212 (2015).

19          Similarly, the fair reporting privilege in Civil Code section 47(d) protects accurate

20   statements to the press about a judicial proceeding.  Rothenberg was not involved in the TRO

21   proceeding and did not issue a press release or any other statement about it.  But even if he did, it

22   would be protected by the fair reporting privilege.  California courts have repeatedly held this

23   privilege protects communications to the press about filing a lawsuit. *Healthsmart Pac., Inc. v.*

24   *Kabateck*, 7 Cal. App. 5th 416, 431 (2016) ("The fair report privilege 'confers an *absolute*

25   privilege on any fair and true report in, or a communication to, a public journal of a judicial

26   proceeding, or anything said in the course thereof.'" (emphasis added) (citation omitted)).

27          Even if the Court were to look past the litigation and fair reporting privileges, Mandel's

28   claims against Rothenberg suffer from other fatal defects that preclude a probability of success on

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

the merits, as set forth in detail below.  Rothenberg respectfully requests that the Court strike the claims against him and the allegations on which they are based and award him attorneys' fees and costs in connection with the Motion.

## II.   FACTS

### A.   Rothenberg's Representation Of Hafermann

Paul Rothenberg is an experienced entertainment attorney.  (Declaration of Paul Rothenberg ("Rothenberg Decl."), ¶ 2.)  In 2008, Rothenberg began representing Hafermann, a singer-songwriter and record producer who goes by the professional name "Skylar Grey."  (*Id.* ¶ 4.)  This was before she met Mandel.  Rothenberg and his current firm, Rothenberg, Mohr & Binder, LLP, still represent Hafermann.  (*Id.*)

For over ten years, Rothenberg has given Hafermann legal advice on all aspects of her career.  (Rothenberg Decl. ¶ 5.)  Rothenberg advises Hafermann on record deals, publishing deals and touring and structuring agreements with managers and producers; and he negotiates these agreements on her behalf.  (*Id.*)  Rothenberg oversees a variety of other legal matters for Hafermann: litigation, settlement of potential claims, as well as family law, intellectual property and real estate issues.  (*Id.*)  Rothenberg has continuously represented Hafermann before, during and after her marriage to Mandel.  (*Id.* ¶ 4.)

While Hafermann was married to Mandel, Rothenberg had to deal with Mandel because he was Hafermann's manager.  (Rothenberg Decl. ¶ 6.)  But Mandel has never been a client of Rothenberg.  (*Id.*)  He never engaged Rothenberg as his attorney or paid him for any legal services.  (*Id.*)  Rothenberg never represented Mandel in any capacity.  (*Id.*)  There is no legal services contract between them, and there never has been.  (*Id.*)

### B.   The Divorce Proceedings

On June 12, 2017, Hafermann filed for divorce from Mandel.  (FAC ¶ 29.)  On September 26, 2017, Hafermann and Mandel settled their divorce at mediation; and they signed a Stipulation for Entry of Decree of Divorce ("Stipulation") memorializing the settlement.  (RJN

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Ex. A.)  In his FAC, Mandel refers to the Stipulation as the "New Agreement." (FAC ¶ 31.)[1]  On

November 6, 2017, the divorce court entered a Decree of Divorce ("Decree") based on the

Stipulation.  (RJN Ex. B.)

Pursuant to the Stipulation, Hafermann and Mandel agreed to "work together with Paul

Rothenberg to negotiate and execute a new management agreement" that would contain a five-

year term and a sunset clause "pursuant to Mr. Rothenberg's advice," among other terms.  (RJN

Ex. A, ¶ 15.)  The Stipulation does not place any conditions on Hafermann's ability to terminate

Mandel as her manager during the five-year term.  (*See generally id.*)  Ultimately, Hafermann and

Mandel never agreed on final terms and never executed a new management agreement per the

Stipulation and Decree.  (*Id.*)

### C.   The TRO Proceedings And Press Coverage

At a party on December 13, 2017 in Malibu, Hafermann learned that Mandel, her ex-

husband, had been stalking her and following her and her now-fiancé, Defendant Taylor.  (RJN

Ex. D.)  Hafermann learned that Mandel had installed hidden cameras and recording devices in her

Los Angeles apartment to eavesdrop and watch them, and that he hired a private investigator and

attorneys to track them.  (*Id.*)  Hafermann also learned that Mandel had screenshots on his phone

of private messages and pictures of her that he should not have had access to, and that he

threatened to physically hurt her.  (*Id.*)

The next morning Hafermann fled Los Angeles.  On the next day, December 15, 2017, in

serious fear of her physical safety, Hafermann filed a civil TRO against Mandel in the Los

Angeles Superior Court.  (RJN Exs. D-E.)  On the same day, Hafermann formally terminated

Mandel as her manager.  (Rothenberg Decl. ¶ 9; FAC ¶ 71.)

Rothenberg did not advise Hafermann to file the TRO.  (Rothenberg Decl. ¶ 8.)

Hafermann was represented by the undersigned litigation counsel at Miller Barondess in the

proceedings.  (RJN Ex. D.)  The TRO was granted based on "a credible threat of violence . . . or

---

[1] Despite basing most of his claims on supposed breaches of the Stipulation (or the "New Agreement"), Plaintiff does not attach a copy of it to the FAC.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    stalking." (*Id.* Ex. E.)  The court ordered Mandel not to stalk, threaten or assault Hafermann; not

2    to contact her in any way; and to stay at least 100 yards away from her. (*Id.*)

3        Because of Hafermann's high profile and popularity, the TRO received press coverage.

4    Articles about the TRO appeared on the websites of TMZ, People, New York Daily News, and

5    other entertainment news outlets. (RJN Exs. G-I.)  Rothenberg did not notify any news outlets

6    about the TRO. (Rothenberg Decl. ¶ 8.)  Civil filings are public records, available for the whole

7    world to see.

8        On February 15, 2018, the court held an evidentiary hearing on the TRO. (RJN Ex. E.)

9    The court did not issue a permanent injunction against Mandel because the judge was concerned

10   that it could potentially ruin Mandel's career. (*Id.* at 20:10-21:9.)  But the court believed

11   Hafermann over Mandel and ordered him to "stay away from her." (*Id.* at 21:10-13.)  The court

12   further ordered: "Don't go to her concerts.  Don't go near her.  Don't go near her home.  Don't try

13   to find out where she is living now with her fiancé.  Don't call her.  Don't have anything to do

14   with her." (*Id.* at 21:26-22:2.)

15       Seven months after the evidentiary hearing on the TRO, in September 2018, the divorce

16   court granted Hafermann's motion to set aside any obligation under the Decree to employ Mandel

17   as her manager. (RJN Ex. F.)

18       **D.    <u>Mandel's Allegations In The FAC</u>**

19       Mandel claims that Rothenberg worked with the other defendants to concoct a false story

20   about Mandel stalking Hafermann and threating violence against her, as set forth in the TRO, as

21   part of a grand scheme to undermine Mandel. (FAC ¶ 61.)  According to the FAC, Rothenberg

22   fabricated this story for multiple reasons: to "retaliate" against Mandel for refusing to renegotiate

23   the terms of the Stipulation with Hafermann; to justify Hafermann's subsequent termination of

24   Mandel as her manager (and thereby allow Hafermann to avoid paying Mandel future

25   commissions); and to wrongfully associate Mandel with Hafermann's ex-boyfriend, Michael Hays

26   ("Hays"), who had been engaging in unrelated efforts to extort Hafermann. (*Id.*)

27       The FAC alleges eight meritless causes of action against Rothenberg:

28       •   **Defamation (First Cause of Action) and False Light (Second Cause of Action)**.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**6**

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

Mandel alleges Rothenberg published false and defamatory statements about him to third parties, including news outlets (FAC ¶¶ 81-89); and that these defamatory statements placed him in a false light (*id.* ¶¶ 90-96). These claims can only be based on Rothenberg "directing Hafermann to publish false statements" (to file the TRO) (*id.* ¶ 70); and notifying news outlets about the TRO (*id.* ¶¶ 63, 69). As discussed below, legal advice is protected litigation activity, and communications to the media about legal proceedings is protected free speech in connection with a public issue. This alleged conduct falls squarely within the anti-SLAPP statute.

- **Breach of Contract (Fifteenth Cause of Action) and Breach of Fiduciary Duty (Sixteenth Cause of Action)**. Mandel claims that Rothenberg was his attorney (FAC ¶¶ 36, 37, 189); and that Rothenberg breached their "legal services contract" and his fiduciary duties to Mandel by: "retaliating against Mandel for declining to renegotiate the terms of the [Stipulation] and to avoid paying Mandel his percentage of any cash advances from record or publishing companies, to wrongfully justify the removal of Mandel in violation of the [Stipulation], and/or conflate Mandel with the alleged extortion by Hays" (*id.* ¶¶ 185, 190). The allegations in support of these claims arise from the same protected conduct: directing Hafermann to file the TRO (*id.* ¶ 66); and notifying news outlets about the TRO (*id.* ¶¶ 61, 63, 69).

- **Intentional Interference With Economic Relations (Seventeenth Cause of Action)**. Mandel alleges that Rothenberg interfered with his management contracts and economic relationships with Hafermann and other, unidentified "third parties" by "directing Hafermann to publish false statements concerning Mandel and directing Hafermann to breach the [Stipulation]." (FAC ¶¶ 196, 197, 202.) Legal advice is protected litigation activity under the anti-SLAPP statute.

- **Intentional Infliction of Emotional Distress (Eighteenth Cause of Action) and Negligent Infliction of Emotional Distress (Nineteenth Cause of Action)**. Mandel claims that Rothenberg, by "directing Hafermann to publish false statements concerning Mandel and directing Hafermann to breach the [Stipulation]," either intended to cause

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

Mandel emotional distress or should have realized his conduct would cause Mandel emotional distress characterized by "illness or bodily harm."  (FAC ¶¶ 215, 224, 226.) These claims, too, arise from protected activity.

- **Conspiracy (Twentieth Cause of Action)**.  Mandel claims that Rothenberg conspired with the other defendants "to accomplish unlawful and wrongful objectives."  (FAC ¶ 232.)  He claims Rothenberg's unlawful conduct consisted of "directing Hafermann to publish false statements concerning Mandel and directing Hafermann to breach the [Stipulation]" (*id.* ¶ 237)—the same protected conduct that forms the basis for Mandel's other causes of action.

Collectively, these causes of action arise from the same alleged conduct by Rothenberg: "directing Hafermann to publish false statements" (to file the TRO) (FAC ¶¶ 202, 215, 224, 237); notifying TMZ and other news outlets about the TRO (*id.* ¶¶ 63, 69); and "directing Hafermann to breach the [Stipulation]" by terminating Mandel as her manager (*id.* ¶¶ 202, 215, 224, 237).  As discussed below, Mandel's claims should all be stricken pursuant to section 425.16.

## III.   PROCEDURAL HISTORY/CHOICE OF LAW

On September 18, 2018, Mandel filed his original Complaint in the Summit County Third Judicial District Court against Hafermann, her assistant Vanessa Ostovich ("Ostovich") and Taylor.  On June 14, 2019, he filed the FAC, adding Rothenberg and Rothenberg, P.C. as defendants.  The case was removed to the United States District Court, District of Utah on August 9, 2019.  On June 3, 2020, the case was transferred to this Court pursuant to Defendants Hafermann, Ostovich and Taylor's motion to transfer venue.  [Dkt. 40.]

It is well-settled that federal courts sitting in diversity apply the substantive law of the forum state, including its choice of law rules.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  California applies the governmental interest approach to conflict of law questions.  "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state."  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).  *See also Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) (proponent of foreign law has

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   burden of establishing true conflict with California law).  If the foreign law proponent satisfies its

2   burden, then the Court will decide whether the foreign state's interest outweighs California's.

3   *Zinser*, 253 F.3d at 1187.

4          Here, no state has a greater interest than California in having its law applied to Mandel's

5   claims against Rothenberg.  All of the relevant events in this case—Rothenberg's provision of

6   legal services and the TRO proceeding—occurred in California.  Rothenberg is a resident and

7   citizen of California.  (Rothenberg Decl. ¶ 2.)  Indeed, all of the defendants in this case are

8   residents of California.  Everything Rothenberg purportedly did to unlawfully harm Mandel, his

9   business or reputation occurred in California.  There is no state whose interest would be more

10  impaired if its law were not applied to the claims.  Indeed, in the change of venue decision, the

11  Utah District Court already held that "the majority of Mr. Mandel's claims stem from events

12  connected to California," the overwhelming number of witnesses are in California, Mandel is not a

13  resident of Utah, and it is "unclear what, if any, opportunities [Mandel] contends he lost within

14  [Utah]."  Accordingly, California law applies.

## IV.    LEGAL STANDARD

16         Under California law, "[a] cause of action against a person arising from any act of that

17  person in furtherance of the person's right of petition or free speech . . . in connection with a

18  public issue shall be subject to a special motion to strike, unless the court determines that the

19  plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal.

20  Civ. Proc. Code § 425.16(b)(1).  In applying the anti-SLAPP statute, courts consider the pleadings

21  and declarations stating the facts upon which the liability or any defense is based.  *Id*.

22  § 425.16(b)(2); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1289-90 (2008).  Ninth Circuit courts

23  apply the anti-SLAPP statute in diversity actions like this one.  *See Planned Parenthood Fed'n of

24  Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *Thomas v. Fry's Elecs.,

25  Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005).

26         The anti-SLAPP analysis has two steps.  *First*, defendants must make a prima facie

27  showing that the claims "arise from" protected activity; namely, "any act of that person in

28  furtherance of the person's right of petition or free speech under the United States Constitution or

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

1  the California Constitution in connection with a public issue."  Cal. Civ. Proc. Code

2  § 425.16(b)(1).  "[A] court must generally presume the validity of the claimed constitutional right

3  in the first step of the anti-SLAPP analysis . . . ."  *Chavez v. Mendoza*, 94 Cal. App. 4th 1083,

4  1089 (2001).  The challenged claims need only arise in part from protected activities.  *Fox*

5  *Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307-08 (2001).

6  *Second*, if the claims arise from protected activity, the burden shifts to the plaintiff to

7  show, by "competent, admissible evidence," the probability he or she will prevail on the merits.

8  *Roberts*, 105 Cal. App. 4th at 613-14.  The plaintiff must also present competent, admissible

9  evidence to overcome all of the defendant's privileges and defenses, including the litigation and

10  fair reporting privileges.  *See Comstock v. Aber*, 212 Cal. App. 4th 931, 953 (2012) (affirming

11  grant of anti-SLAPP motion where cross-defendant's conduct was privileged under Civil Code

12  section 47(c)).  If the plaintiff cannot make this showing, then the claim is dismissed and the

13  defendant must be awarded attorneys' fees and costs.  *Wilson v. Parker, Covert & Chidester*, 28

14  Cal. 4th 811, 821, 826 (2002), *superseded by statute on other grounds*; Cal. Civ. Proc. Code

15  § 425.16(c)(1).

16  A plaintiff may not avoid or frustrate a hearing on an anti-SLAPP motion by filing an

17  amended complaint.  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 772 (2003) ("[A] plaintiff cannot

18  use an eleventh-hour amendment to plead around a motion to strike under the anti-SLAPP

19  statute.").  Nor can a plaintiff amend his or her complaint after it is stricken pursuant to section

20  425.16.  *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073-74 (2001).

21  **V.    PRONG ONE: THE CLAIMS ARISE FROM PROTECTED ACTIVITY**

22  Mandel's claims against Rothenberg all "arise from" protected activity under the anti-

23  SLAPP statute.  Section 425.16(e) defines an "act in furtherance of a person's right of petition or

24  free speech under the United States or California Constitution in connection with a public issue"

25  as including: "(2) any . . . statement or writing made in connection with an issue under

26  consideration or review by a . . . judicial body, or any other official proceeding authorized by

27  law"; "(3) any . . . statement or writing made in a place open to the public or a public forum in

28  connection with an issue of public interest"; and "(4) any other conduct in furtherance of the

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

1   exercise of the constitutional right of petition or the constitutional right of free speech in

2   connection with . . . an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e).  The alleged

3   communications and conduct at issue here are protected under all three subsections.

4       **A.**     **All Of Mandel's Claims Arise From Protected Litigation Activity**

5       Courts have adopted a "fairly expansive view" of what constitutes litigation-related

6   activities within the scope of section 425.16.  *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal.

7   App. 4th 141, 154 (2012).  "[A] statement is 'in connection with' litigation under section

8   [425.16(e)(2)], if it relates to the substantive issues in the litigation and is directed to persons

9   having some interest in the litigation."  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962 (2010)

10  (citation omitted).

11      Here, the causes of action against Rothenberg arise from: (1) Rothenberg's legal advice to

12  Hafermann in connection with the TRO proceeding ("directing" her to publish the allegedly false

13  statements therein) and the divorce proceeding ("directing" her to breach the Stipulation); and

14  (2) Rothenberg's sending the TRO to entertainment news outlets.  This alleged conduct falls

15  squarely within section 425.16(e)(2).

16          **1.**     **Rothenberg's Alleged Legal Advice to Hafermann**

17      Mandel alleges that Rothenberg "direct[ed] Hafermann to publish false statements."  (FAC

18  ¶¶ 70, 202, 215, 224, 237.)  The "false statements" refer to the TRO filing.  All of Mandel's eight

19  causes of action against Rothenberg are based on this alleged conduct.  (*Id.* ¶¶ 81-96, 182-241.)

20      Mandel further alleges that Rothenberg "direct[ed] Hafermann to breach the [Stipulation]."

21  (FAC ¶¶ 202, 215, 224, 237.)  The Stipulation is a settlement agreement in the divorce proceeding.

22  This conduct forms the basis of Mandel's claims for intentional interference with economic

23  relations (Seventeenth Cause of Action), intentional and negligent infliction of emotion distress

24  (Eighteenth and Nineteenth Causes of Action), and conspiracy (Twentieth Cause of Action).  (*Id.*

25  ¶¶ 195-241.)

26      Accordingly, all of Mandel's claims against Rothenberg arise from Rothenberg's legal

27  advice to his client in connection with litigation adverse to Mandel—the TRO proceeding and the

28  divorce proceeding.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The California Supreme Court has held that "counseling" a client in connection with a judicial proceeding is protected activity under the anti-SLAPP statute. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999); *see also Thayer*, 207 Cal. App. 4th at 154 ("[L]egal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action 'arising from' those protected activities."); *Cabral v. Martins*, 177 Cal. App. 4th 471, 479-80 (2009) ("[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."); *Contreras*, 5 Cal. App. 5th at 412 (affirming order granting anti-SLAPP motion where claims against attorney arose out of advice to clients).

Settlement negotiations are also protected petitioning activity. *Optional Capital, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 18 Cal. App. 5th 95, 114 (2017) ("[B]ecause settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarding as having been made in connection with the underlying lawsuit for purposes of section 425.16[(e)(2)]."); *Rubin v. Green*, 4 Cal. 4th 1187, 1194-95 (1993) (settling a client's claims are acts in furtherance of protected activity).

Because Rothenberg's alleged conduct and communications were all in connection with the aforesaid litigation activity and settlement of claims in the TRO and divorce proceedings, they are entitled to protection under section 425.16(e)(2).

### 2. Rothenberg's Alleged Statements to News Outlets

According to Mandel, Rothenberg notified TMZ and other entertainment news outlets that Hafermann filed a TRO against Mandel, which was granted.  (FAC ¶¶ 63, 69.)  This alleged conduct forms the basis of Mandel's claims for defamation (First Cause of Action), false light (Second Cause of Action), breach of contract (Fifteenth Cause of Action), and breach of fiduciary duty (Sixteenth Cause of Action).  (*Id.* ¶¶ 81-96, 182-94.)

Even if Rothenberg notified news outlets about the TRO proceeding (he did not), such communications relating to judicial proceedings are consistently recognized as protected speech under section 425.16(e)(2). *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   Cal. App. 4th 1539, 1549 (2010) (alleged willful misrepresentation of lawsuit in letter to

2   newspaper covered by anti-SLAPP statute); *Healy v. Tuscany Hills Landscape & Recreation*

3   *Corp.*, 137 Cal. App. 4th 1, 5-6 (2006) (informing interested parties about pending litigation was

4   "unquestionably 'in connection with' judicial proceedings"); *Dove Audio, Inc. v. Rosenfeld, Meyer*

5   *& Susman*, 47 Cal. App. 4th 777, 784 (1996) (letter from law firm to celebrities who made charity

6   recording, stating that money had not gone to celebrities' charities and seeking support for law

7   firm's petition to Attorney General, was protected by anti-SLAPP statute).  The alleged

8   communications to news outlets are protected by section 425.16(e)(2).

9   **B.**      **The First, Second, Fifteenth And Sixteenth Causes Of Action Arise From**

10         **Speech In Connection With A Public Issue**

11         As set forth above (*see supra* Section II.D.), Mandel's defamation, false light, breach of

12   contract and breach of fiduciary duty claims are all based on Rothenberg's alleged statements to

13   news media notifying them about the TRO proceeding.  This conduct is not only protected as

14   litigation activity under section 425.16(e)(1), it is also protected as speech to a public forum in

15   connection with an "issue of public interest" under section 425.16(e)(3)-(4).

16         An "issue of public interest" is "*any issue in which the public is interested*."  *Nygard, Inc.*

17   *v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (statements by employee to Finnish

18   magazine about former employer, a prominent Finnish businessman, protected by section

19   425.16(e)(3)).  This includes the affairs of celebrities and popular entertainment figures.  For

20   example, in *Hall v. Time Warner, Inc.*, the Court of Appeal held that an interview of a

21   housekeeper named in Marlon Brando's will was in connection with a public issue because of the

22   "public's fascination with Brando and widespread public interest in his personal life."  153 Cal.

23   App. 4th 1337, 1347 (2007); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 899 (9th Cir. 2010)

24   (lawsuit by Paris Hilton against Hallmark for appropriating her right of publicity in a card arose

25   from protected activity because Paris Hilton was a topic of widespread interest).  News media also

26   constitutes a "public forum" for purposes of section 425.16(e)(3).  *Nygard, Inc.*, 159 Cal. App. 4th

27   1038.

28         The public's interest in Hafermann is not in dispute.  She is a Grammy-nominated artist

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   whose songs have reached the top of the Billboard charts.  (FAC ¶ 17).  The TMZ, People, New

2   York Daily News, and other news articles were widely distributed speech concerning a judicial

3   proceeding between Hafermann, a popular recording artist, and her ex-husband/manager.  Any

4   alleged communications by Rothenberg to these news outlets are protected by section

5   425.16(e)(3)-(4).

6   **VI.   PRONG TWO: PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF**

7   **PREVAILING ON ANY OF HIS FRIVOLOUS CLAIMS**

8        Because Mandel's claims against Rothenberg arise out of protected activity, the burden

9   shifts to Mandel to establish through competent, admissible evidence "a probability that [he] will

10  prevail on [his] claim[s]."  Cal. Civ. Proc. Code § 425.16(b)(1).  Mandel cannot meet his burden.

11       **A.   Mandel Cannot Present "Competent, Admissible Evidence" Of Rothenberg's**

12       **Advice To His Client**

13       All of Mandel's claims against Rothenberg are based on Rothenberg's purported legal

14  advice to Hafermann in connection with the TRO proceeding and the divorce proceeding:

15  "directing Hafermann to publish false statements and directing Hafermann to breach the

16  [Stipulation]."  (FAC ¶¶ 70, 202, 215, 224, 237; *see supra* Section II.D.)

17       Legal advice is protected by the attorney-client privilege and is inadmissible as evidence.

18  *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("[T]he attorney-client privilege is,

19  perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the

20  just and orderly operation of our legal system."); *United States v. Mett*, 178 F.3d 1058, 1062 (9th

21  Cir. 1999).  Accordingly, Mandel cannot possibly present "competent, admissible evidence" of

22  Rothenberg's legal advice to his client.  Mandel's claims should all be stricken for this reason

23  alone.  Cal. Civ. Proc. Code § 425.16(b)(1).

24       **B.   The Litigation Privilege Bars All Of Mandel's Claims**

25       Even if Mandel were able to present evidence of Rothenberg's legal advice to Hafermann

26  (he cannot), communications between attorney and client are quintessential conduct protected by

27  the litigation privilege of Civil Code section 47(b).  Mandel's claims fail as a matter of law.

28       "[I]t has been established for well over a century that a communication is absolutely

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   immune from any tort liability if it has '"some relation"' to judicial proceedings." *Healy*, 137 Cal.

2   App. 4th at 5 (citation omitted).[2]   The only exception to the application of the litigation

3   privilege to tort claims is for malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 216

4   (1990), *as modified* (Mar. 12, 1990).

5          The litigation privilege has an "expansive reach," and a communication need only have

6   "some relation" to an official proceeding for it to apply. *Rubin*, 4 Cal. 4th at 1193-94; *Costa v.*

7   *Superior Court*, 157 Cal. App. 3d 673, 678 (1984) (all doubts regarding connection between

8   challenged conduct and litigation must be resolved in favor of applying the privilege).

9          The litigation privilege "does not depend on . . . 'motives, morals, ethics or intent,'" and

10   applies with equal force to both true and false communications. *Dean v. Friends of Pine Meadow*,

11   21 Cal. App. 5th 91, 107 (2018) (citation omitted).  It is "absolute in nature." *Silberg*, 50 Cal. 3d

12   at 215, 218 (rejecting any qualifications on the privilege or any "interest of justice" test).

13          The litigation privilege is not limited to statements made in court; counseling a client, pre-

14   litigation communications, and settlement discussions are also covered. *See, e.g.*, *Flores v.*

15   *Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006) (attorney's act of counseling client is

16   protected by litigation privilege); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 843-44

17   (2005) (reversing order denying anti-SLAPP motion where claims involving statements made

18   during settlement negotiations were barred by litigation privilege); *Bergstein v. Stroock & Stroock*

19   *& Lavan LLP*, 236 Cal. App. 4th 793, 815 (2015) (privilege applies to "communicative activities

20   of counsel . . . made in or in anticipation of judicial proceedings").  "Any doubt about whether the

21   privilege applies is resolved in favor of applying it." *Finton Constr.*, 238 Cal. App. 4th at 212

22   (citation omitted).

23          Here, all eight claims against Rothenberg are based on Rothenberg's alleged advice to

24   Hafermann to file the TRO.  (FAC ¶¶ 81-96, 182-94.)  Therefore, they are all barred by the

25

---

26   [2] Although California law applies here, Utah and New York also recognize absolute privileges for

27   statements relating to judicial proceedings. *See Price v. Armour*, 949 P.2d 1251, 1256 (Utah
1997); *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir.

28   1996).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

litigation privilege. Additionally, four of the claims—intentional interference, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy—are based on even more protected conduct: Rothenberg's additional advice to "breach" the Stipulation.  (*Id.* ¶¶ 196, 197, 202.)  The litigation privilege plainly shields Rothenberg's communications to his own client.  All of his alleged advice had a "connection" or "logical relation" to the TRO proceeding or the divorce proceeding.  *Silberg*, 50 Cal. 3d at 212.

Mandel cannot prevail on his claims, as a matter of law, because they are barred by the litigation privilege.  *Healy*, 137 Cal. App. 4th at 5-6 (reversing denial of anti-SLAPP motion because litigation privilege protected defamatory statements regarding a lawsuit); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 971 (2014) (reversing denial of anti-SLAPP motion because litigation privilege barred intentional infliction of emotional distress claim based on conduct relating to defendants' request for TRO).

## C.    The Fair Reporting Privilege Bars The First, Second, Fifteenth, And Sixteenth Causes Of Action

"The fair report privilege 'confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof.'"  *Kabateck*, 7 Cal. App. 5th at 431 (citation omitted).  *See also* Cal. Civ. Code § 47(d); *Peper v. Gannett Co., Inc.*, No. 2002061753, 2003 WL 22457121, at *7 (Cal. Super. Ct. Apr. 4, 2003) (dismissing "intentional interference with contractual relations [and] intentional interference with prospective economic advantage . . . claims" based on fair reporting privilege), *aff'd*, No. A102831, 2004 WL 2538839 (Cal. Ct. App. Nov. 10, 2004).[3]

"[F]air and true communications to the news media about allegations in a complaint are covered by the privilege."  *Kabateck*, 7 Cal. App. 5th at 432.  "'Fair and true' in this context *does not* refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect to what occurred in the judicial

---

[3] Like the litigation privilege, both Utah and New York recognize the fair reporting privilege.  *See Schwarz v. Salt Lake Tribune*, No. 20030981-CA, 2005 UT App 206, 2005 WL 1037843, at *1 (Utah Ct. App. May 5, 2005); N.Y. Civ. Rights § 74.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   proceedings." *Id.* at 434 (emphasis added).  The pertinent question is "the extent to which the

2   attorneys' statements accurately conveyed the substance of the allegations made in the . . .

3   complaint." *Id.*; *see also J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 101-

4   05 (2016) (fair reporting privilege protected firm press release about evidence presented at trial);

5   *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 790 (2017) (fair reporting privilege protected

6   attorney's email to the press about allegations in client's malicious prosecution action).

7           Here, Rothenberg's allegedly wrongful communications consisted of simply informing

8   entertainment news outlets about the TRO proceeding.  (FAC ¶¶ 61, 63, 69.)  Mandel does not

9   identify any actual communications to the press (and there are none).  Nor does Mandel even

10   allege that Rothenberg misrepresented the substance of the TRO filing or any actions in the

11   proceeding—only that the allegations in the TRO filing itself are false.  (*Id.* ¶¶ 59-61.)  Of course,

12   this allegation is belied by the trial court finding that Hafermann was credible and ordering

13   Mandel to stay away from her.

14           Because Rothenberg's communications are protected by the fair reporting privilege, the

15   claims upon which they are based—the First, Second, Fifteenth, and Sixteenth Causes of Action—

16   fail as a matter of law.  *Kabateck*, 7 Cal. App. 5th at 438 (affirming order granting attorney

17   defendants' anti-SLAPP motion); *Argentieri*, 8 Cal. App. 5th at 794-95 (same).

18   **D.        The Fifteenth And Sixteenth Causes Of Action Fail For Additional Reasons**

19           As set forth above, the Fifteenth Cause of Action for breach of contract and Sixteenth

20   Cause of Action for breach of fiduciary duty fail because they are barred by the litigation privilege

21   and the fair reporting privilege.   However, these claims fail for independent reasons.

22           First, to recover for breach of contract, a plaintiff must prove: (1) the existence of

23   a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and

24   (4) resulting damages.  *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)

25   (stating elements).  Mandel cannot establish the existence of any contract between him and

26   Rothenberg, because there is none.  (Rothenberg Decl. ¶ 6.)  This is fatal to his breach of contract

27   claim.  *Wang & Wang LLP v. Banco Do Brasil S.A.*, No. 2:06-CV-00761-JAM-KJM, 2009 WL

28   530135, at *2 (E.D. Cal. Mar. 3, 2009) (granting summary judgment for defendant where plaintiff

1   could not prove existence of contract); *Barragan v. Deutsche Bank Nat'l Tr. Co.*, No. CV 15-

2   02614 DDP (FFMx), 2015 WL 3617104, at *4 (C.D. Cal. June 9, 2015) (dismissing breach of

3   contract claim where there was no contract).  Even if Mandel were able to establish a contract

4   between him and Rothenberg, Mandel cannot show that he performed under any such contract

5   because he never paid Rothenberg for any legal services.  (Rothenberg Decl. ¶ 6.)  Because there

6   is no legal or factual basis for this claim, it must be stricken.

7           Second, there was never an attorney-client relationship between Rothenberg and Mandel

8   for a fiduciary duty to arise.  "An attorney-client relationship is not created by the unilateral

9   declaration of one party to the relationship.  Rather, the relationship can only be created by

10  contract, express or implied."  *Koo v. Rubio's Rests., Inc.*, 109 Cal. App. 4th 719, 729 (2003)

11  (citation omitted); *see also Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007).

12  Mandel cannot show he entered into any contract with Rothenberg, signed any engagement letter

13  for Rothenberg's services, received any invoices in connection with services Rothenberg allegedly

14  rendered to him, or paid Rothenberg for any services he allegedly rendered.  (Rothenberg Decl.

15  ¶ 6.)  That's because Rothenberg never represented Mandel.  (*Id.*)  Indeed, at all relevant times,

16  Rothenberg represented Hafermann adverse to Mandel.  (*Id.* ¶ 7.)

17          Because the only factual basis alleged for a fiduciary relationship between Mandel and

18  Rothenberg is the attorney-client relationship (FAC ¶ 189), the breach of fiduciary duty claim

19  fails.  *Traverso v. Eller Media Co.*, No. C 97-1254 SI, 2002 WL 467717, at *6 (N.D. Cal. Mar. 25,

20  2002) ("The existence of a fiduciary relationship is, self-evidently, an essential element of a cause

21  of action for breach of fiduciary duty."); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th

22  1544, 1558 (2007) (demurrer properly sustained without leave to amend where plaintiffs failed to

23  demonstrate facts supporting fiduciary relationship).

24      **E.      Mandel's Interference Claim Is Legally Defective**

25          The Seventeenth Cause of Action is for "intentional interference with economic relations."

26  Mandel alleges that, by advising Hafermann to file the TRO and to breach the Stipulation,

27  Rothenberg interfered with Mandel's management contracts and economic relationships with

28  Hafermann and other, unidentified "third parties."  (FAC ¶¶ 196, 197, 202.)  Essentially, Mandel

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

1    claims that Rothenberg urged Hafermann to wrongfully terminate Mandel's employment as her

2    manager, causing him to lose future commissions.  Based on these vague allegations, it's unclear

3    whether Mandel is asserting a claim for intentional interference with contractual relations or a

4    claim for intentional interference with prospective economic advantage.  Either way, Mandel

5    cannot show a probability of prevailing.

6              1.     **Rothenberg's Advice to His Client Cannot Be a Basis for Intentional**

7                    **Interference**

8              As an attorney advising Hafermann, Rothenberg cannot be liable for intentional

9    interference with the Stipulation or other "management contracts."  *Schick v. Lerner*, 193 Cal.

10   App. 3d 1321, 1329 (1987) ("[A]bsent extraordinary circumstances, an attorney may not be held

11   liable for urging a client to breach a contract with some third party."); *L.A. Airways, Inc. v. Davis*,

12   687 F.2d 321, 328 (9th Cir. 1982) (affirming summary judgment for defendant attorney on

13   interference with contract claim "where, as here, an [agent] is motivated in part by a desire to

14   benefit his principal, his conduct in inducing a breach of contract should be privileged").  This

15   privilege applies equally to claims for intentional interference with prospective economic

16   advantage.  *Davis*, 687 F.2d at 323, n.1.

17             In *Schick*, the plaintiff sued an attorney for inducing breach of contract based on the advice

18   the attorney gave his client, a contracting party.  The trial court sustained the attorney's demurrer

19   without leave to amend.  In affirming, the Court of Appeal held that the claim was barred as a

20   matter of law: "[P]ublic policy dictates that attorneys must remain free to counsel their clients

21   without fear of subjecting themselves to liability as a result of the proper discharge of their

22   professional obligations.  Clients as well must feel free to seek out an attorney's advice

23   on *any* issue at *any* time.  'Any rule to the contrary would constitute a serious impairment to the

24   attorney-client relationship, and a resulting deleterious effect on the administration of justice.'"

25   *Schick*, 193 Cal. App. 3d at 1329 (citation omitted).

26             Here, like in *Schick*, Mandel's interference claim is premised on the advice Rothenberg

27   allegedly gave to Hafermann, his client.  As a matter of law, he cannot be liable for inducing her to

28   breach the Stipulation or other "management contracts."

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 Avenue of The Stars, Suite 1000   Los Angeles, California 90067
Tel: (310) 552-4400     Fax: (310) 552-8400

**2.      Mandel Cannot Show Rothenberg's Conduct Was "Independently Wrongful"**

To the extent Mandel is asserting a claim for intentional interference with prospective economic advantage, it is insufficiently pled; and facts sufficient to cure its deficiencies do not exist.  This tort requires: (1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the acts of the defendant.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003).  With respect to the third element, the plaintiff must show defendant's conduct was independently wrongful.  *Id.*  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.* at 1159.  The conduct must be wrongful by some legal measure other than the fact of interference itself.  *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007).

Mandel fails to even allege an independently wrongful act by Rothenberg.  Nor can Mandel show that Rothenberg's alleged conduct—providing legal advice to Hafermann, his client—is unlawful by any determinable legal standard.  Because Mandel cannot show a probability of success on this claim, it should be stricken.  *Contemporary Servs. Corp.*, 152 Cal. App. 4th at 1060 (affirming order granting anti-SLAPP motion where prospective economic advantage claim could not be based on conduct insufficient to prove plaintiffs' other alleged tort claims).

**F.      Mandel's Infliction Of Emotional Distress Claims Fails**

Mandel's Eighteenth Cause of Action for intentional infliction of emotional distress also fails for reasons other than the litigation privilege.  This claim only lies if a defendant's conduct was "extreme and outrageous."  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (citation omitted).  "[I]t is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his

MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

1  conduct has been characterized by "malice," or a degree of aggravation which would entitle the

2  plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has

3  been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

4  decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"

5  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (citation omitted).

6       Nothing in the FAC—assuming, *arguendo*, that Mandel could substantiate those

7  allegations—comes close to meeting this standard.  *See Yurick v. Superior Court*, 209 Cal. App.

8  3d 1116, 1129 (1989) (supervisor repeatedly stating plaintiff was a senile liar in presence of others

9  not outrageous); *Unterberger v. Red Bull N. Am., Inc.*, 162 Cal. App. 4th 414, 423 (2008)

10  (termination of business relationship not outrageous); *Ross v. Creel Printing & Publ'g Co.*, 100

11  Cal. App. 4th 736, 748 (2002) (attorney threatening criminal prosecution not outrageous).

12  Rothenberg's legal advice to his own client hardly qualifies as "utterly intolerable in a civilized

13  community."  This claim should be stricken.

14       **G.     Mandel's Negligent Infliction Of Emotional Distress Claim Fails**

15       By his Nineteenth Cause of Action, Mandel alleges that Rothenberg negligently inflicted

16  emotional distress on him by advising Hafermann to file the TRO and to terminate his

17  employment as her manager.  (FAC ¶ 224.)  Mandel cannot prevail on this claim.

18       There is no independent tort of negligent infliction of emotional distress in California.

19  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).  The tort is negligence, a cause of action

20  in which a duty to the plaintiff is an essential element.  *Id*. at 1073.  "[U]nless the defendant has

21  assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery

22  is available only if the emotional distress arises out of the defendant's breach of some other legal

23  duty and the emotional distress is proximately caused by that breach of duty.  Even then, with rare

24  exceptions, a breach of the duty must threaten physical injury, not simply damage to property or

25  financial interests."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).

26       Cases where courts allow plaintiffs to pursue this type of claim involve either a special

27  relationship between plaintiff and defendant or a breach that threatens physical injury.  *See*, *e.g.*,

28  *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 930-31 (1980) (doctor misdiagnosed plaintiff's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   wife with syphilis); *Marlene F v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 590-91

2   (1989) (hired therapist sexually molested plaintiff's sons); *Phyllis v. Superior Court*, 183 Cal.

3   App. 3d 1193, 1196-97 (1986) (school board failed to notify plaintiff that her daughter was

4   sexually molested by a fellow student); *Christensen v. Superior Court*, 54 Cal. 3d 868, 894-96

5   (1991) (crematorium mishandled remains of plaintiffs' close relative); *Potter*, 6 Cal. 4th at 985

6   (company's unlawful disposal of toxic waste caused plaintiff to develop a fear of cancer after

7   ingesting contaminated water).

8       Mandel does not allege a duty sufficient for negligent infliction of emotional distress, nor

9   can he.  Rothenberg did not have a special relationship with Mandel (such as doctor-patient) where

10  he assumed any duty.  Even if Mandel could establish some other legal duty (there is none),

11  Rothenberg's alleged breaches—giving legal advice to Mandel's ex-wife—could not have

12  possibly threatened any physical injury to Mandel.  The claim is frivolous and should be stricken.

13      **H.       Conspiracy Is Not An Independent Cause Of Action**

14      The Twentieth Cause of Action is based on Defendants' conspiring to "accomplish

15  unlawful and wrongful objectives as set forth in [the FAC]."  (FAC ¶ 231.)  It is based on the same

16  alleged conduct by Rothenberg: advising Hafermann to file the TRO and to terminate Mandel's

17  employment as her manager.  (*Id.* ¶ 237.)

18      Conspiracy is not an independent cause of action.  *Applied Equip. Corp. v. Litton Saudi

19  Arabia Ltd.*, 7 Cal. 4th 503, 510-11, 514 (1994); *Dean*, 21 Cal. App. 5th at 101 n.4.  "Standing

20  alone, a conspiracy does no harm and engenders no tort liability.  It must be activated by the

21  commission of an actual tort."  *Applied Equip. Corp.*, 7 Cal. 4th at 511.  "[T]ort liability arising

22  from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e.,

23  that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for

24  breach of that duty."  *Id.*

25      As set forth above, Rothenberg is not subject to liability for any of the tort claims upon

26  which Mandel's conspiracy claim could be based.  (*See supra* Section VI.B.)  Because Mandel

27  cannot prevail on any of the underlying tort claims, the conspiracy claim necessarily fails.  *Kenne*,

28  230 Cal. App. 4th at 969 ("[Mandel's] failure to show a probability of success on any of the

SPECIAL MOTION TO STRIKE PLAINTIFF'S FAC AND REQUEST FOR ATTORNEYS' FEES

1   underlying tort claims therefore bars her conspiracy claim as a matter of law."); *Dean*, 21 Cal.

2   App. 5th at 101 n.4 (affirming order granting anti-SLAPP and striking conspiracy claim where

3   plaintiffs failed to show probability of prevailing on underlying torts of defamation and tortious

4   interference); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 590 (2003) (affirming

5   order granting anti-SLAPP and striking conspiracy claim where plaintiffs failed to show

6   probability of prevailing on underlying breach of fiduciary duty claim).

7   **VII.**   **CONCLUSION**

8        For the foregoing reasons, pursuant to section 425.16, Rothenberg respectfully requests

9   that the Court grant this Motion in its entirety, strike Mandel's First, Second, Fifteenth, Sixteenth,

10   Seventeenth, Eighteenth, Nineteenth, and Twentieth Claims for Relief and the allegations on

11   which they are based, and award Rothenberg his reasonable attorneys' fees and costs pursuant to

12   further motion.

13

14   DATED:  July 2, 2020          Respectfully Submitted,

15             MILLER BARONDESS, LLP

16

17             By: _____

18                 A. SASHA FRID

19                 Attorneys for Defendants
              PAUL ROTHENBERG and ROTHENBERG,

20                 P.C.

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

463738.4

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on this 2nd day of July, 2020, I electronically filed the

3

foregoing **NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S**

4

**FIRST AMENDED COMPLAINT PURSUANT TO C.C.P. § 425.16; AND REQUEST FOR**

5

**ATTORNEYS' FEES AND COSTS (C.C.P. § 425.16(c)(1))** with the Clerk of the Court using

6

the CM/ECF system which will send notification of such filing to the following:

7

Andrew G. Deiss
Corey Drew Riley

8

Colleen Mooney
DEISS LAW

9

10 W. 100 S., Suite 425
Salt Lake City, UT 84101

10

*Attorneys for Plaintiff*
TODD MANDEL

Tel: 801-463-0226
Email: adeiss@deisslaw.com
          criley@deisslaw.com
          cmooney@deisslaw.com

11

Marc S. Mazer
Andrew J. Weill

12

WEILL & MAZER
200 California Street, Suite 400

13

San Francisco, CA 94111

*Attorneys for Defendants*
HOLLY HAFERMANN, VANESSA
OSTOVICH and ELLIOTT TAYLOR

Tel: 415-421-0730
Fax: 415-421-2355
Email: mazer@weillmazer.com
          weill@weillmazer.com

14

15

16

17

18

19

_____
Alexandria Alamango

20

21

22

23

24

25

26

27

28

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400