MARC S. MAZER (SBN 81163)
mazer@weillmazer.com
ANDREW J. WEILL (SBN 73093)
weill@weillmazer.com
WEILL & MAZER
A Professional Corporation
200 California Street, Suite 400
San Francisco, California 94111
Telephone:   (415) 421-0730
Fax: (415) 421-2355

Attorneys for Defendants Holly Hafermann, a/k/a Skylar Grey,
Vanessa Ostovich, and Elliott Taylor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TODD MANDEL, an individual, | CASE NO.: 3:20-cv-03668-JSC |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT (Rule 12(b)(6))** |
| v. | |
| HOLLY HAFERMANN a/k/a SKYLAR GREY, VANESSA OSTOVICH, ELLIOTT TAYLOR, PAUL ROTHENBERG, ROTHENBERG, P.C. and DOES 1 through 10, | Date:  March 11, 2021 Time:  9:00 a.m. Location:  Courtroom E |
| Defendants. | |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

STATEMENT OF FACTS ....................................................................... 1

ARGUMENT ....................................................................................... 1

I.   THE FIRST CAUSE OF ACTION IN THE SAC FAILS TO STATE A CLAIM AGAINST OSTOVICH, BECAUSE IT FAILS TO SPECIFY ANY DEFAMATORY STATEMENTS MADE BY HER. .............................................................. 1

II.   THE SECOND CAUSE OF ACTION IN THE SAC IS A NEW CLAIM, FOR WHICH PLAINTIFF FAILED TO SEEK LEAVE OF COURT, AND OTHERWISE FAILS TO STATE A CLAIM. ....................................................................... 2

    A.   Improper Combination of Alternative Claims in a Single Cause of Action ............... 3

    B.   The Operating Agreement Claims in the Second and Fourth Causes of Action are New Claims for which Leave to Add was not Sought. ............................................. 3

    C.   The 2010 Management Agreement Claims in the Second Cause of Action Also Raise a New Claim, For Which Leave Should have been Sought. ....Error! Bookmark not defined.

    D.   To the Extent Mandel is Attempting to State a Cause of Action for the Purported "New Management Agreement" Dated September 26, 2017, This Theory Was Expressly Rejected by This Court in the Prior Order .................................................................. 5

    E.   To the Extent Mandel is Attempting to State a Cause of Action for the Management Agreement with Mandel Music Group, LLC (MMG), the Claim Must be Asserted by MMG, Not Mandel Personally. .................................................................................. 5

III.   THE THIRD CAUSE OF ACTION FOR PROMISSORY ESTOPPEL ISA REHASH OF THE "NEW MANAGEMENT AGREEMENT" THEORY THAT THIS COURT EXPRESSLY REJECTED IN THE PRIOR ORDER. ...................................... 7

IV.   THE FOURTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS PREMISED ON THE PURPORTED 2016 OPERATING AGREEMENTS AND IS A NEW CLAIM FOR WHICH LEAVE WAS NOT SOUGHT OR GRANTED; EVEN IF IT WERE CONSIDERED, IT IS NOT PROPERLY PLEADED UNDER DELAWARE LAW. ......... 8

V.   THE FIFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT DOES NOT LIE.   Error! Bookmark not defined.

VI.   THE SIXTH CAUSE OF ACTION FOR ALIENATION OF AFFECTIONS SHOULD BE DISMISSED, OR IN THE ALTERNATIVE, REQUIRES A MORE DEFINITE STATEMENT OF FACTS ........................................................................ 10

VII.   THE NINTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER. ............................................................................................. 11

VIII.   THE TWELFTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONSHIPS (IIER) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER. ............................... 12

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

i

IX.     THE THIRTEENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.................................................................... 15

X.      THE FOURTEENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.................................................................... 18

XI.     THE FIFTEENTH CAUSE OF ACTION FOR CONSPIRACY SHOULD BE DISMISSED.......................................................................................................... 18

CONCLUSION ....................................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

# TABLE OF AUTHORITIES

**Cases**

*California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*
    94 Cal.App.4th 151 (2001)...........................................................................................10

*Diehl v. Starbucks Corporation*
    (S.D. Cal., June 17, 2014, No. 12CV2432 AJB (BGS)) 2014 WL 12540524 ..........................4

*Donahue v. Pendleton Woolen Mills, Inc.*
    633 F. Supp. 1423 (S.D.N.Y. 1986)...................................................................................3

*E. River Sav. Bank v. Sec'y of Hous. & Urban Dev.*
    702 F. Supp. 448 (S.D.N.Y. 1988)....................................................................................3

*Glidepath Ltd. v. Beumer Corp.*
    No. CV 12220-VCL, 2019 WL 855660 (Del. Ch. Feb. 21, 2019), *judgment
    entered,* (Del. Ch. 2019).................................................................................................8

*Gregory & Swapp, PLLC v. Kranendonk*
    2018 UT 36, 424 P.3d 897..............................................................................................16

*John Brown University v. Charisma in Missions, Inc.*
    2016 WL 7448113 (C.D. Cal., Mar. 25, 2016, No. 15CV08890ABAGRX) ............................6

*Klein v. Chevron U.S.A., Inc.*
    202 Cal.App.4th 1342 [137 Cal.Rptr.3d 293] (2012) .........................................................10

*Klein v. Wasserman   .*
    No. CV 2017-0643-KSJM, 2019 WL 2296027 (Del. Ch. May 29, 2019)..................................8

*Kuroda v. SPJS Holdings, L.L.C.*
    No. CIV.A. 4030-CC, 2010 WL 925853 (Del. Ch. Mar. 16, 2010)) .......................................9

*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*
    44 Cal.App.4th 194 (1996)..............................................................................................10

*Sherman v. British Leyland Motors, Ltd.*
    601 F.2d 429, 440 (9th Cir. 1979)) ...............................................................................6-7

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*
    845 A.2d 1031 (Del. 2004)..............................................................................................12

**Statutes**

Fed.R.Civ.P. Rule 12(b)(6) ...............................................................................................1

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

**STATEMENT OF ISSUES TO BE DECIDED**

Defendants Taylor, Hafermann and Ostovich (collectively "Defendants") bring this motion to dismiss certain causes of action in the Second Amended Complaint ("SAC").  The issues to be decided are:

Whether, under this Court's Order dated November 30, 2020 (Dkt. 94), Fed.R.Civ.P. Rule 12(b)(6), and the applicable substantive law, Plaintiff has failed to state claims for relief in the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action of the SAC.

**STATEMENT OF FACTS**

The Defendants have set forth relevant facts which the Court has considered in their prior motion to dismiss, and those papers are incorporated herein by reference.

The most pertinent additional fact to the present motion is that this Court entered an Order dated November 30, 2020 (the "Prior Order"), granting the Defendants' prior Motion to Dismiss in part, with leave to amend, with the express condition that Plaintiff could not add new claims without leave of court.

As will be shown below, the SAC fails to address defects noted by the Court in its Prior Order, and attempts to add new claims in disregard of this Court's mandate not to do so absent leave.  These failures mandate dismissal without leave to amend.

**ARGUMENT**

**I.  THE FIRST CAUSE OF ACTION IN THE SAC FAILS TO STATE A CLAIM AGAINST OSTOVICH, BECAUSE IT FAILS TO SPECIFY ANY DEFAMATORY STATEMENTS MADE BY HER.**

"Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the alleged defamatory statement must be specifically identified." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004); see also *Jones*

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

*v. Thyssenkrupp Elevator Corp.*, No. C-05-3539 EMC, 2006 WL 680553, at *6 (N.D. Cal. Mar. 14, 2006) ("The standard for pleading defamation is more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action."). This requires a plaintiff "to allege what defamatory written and oral statements each defendant made." *Square 1 Bank*, No. 12-CV-05595-JSC, 2014 WL 4181907, at *5 (quotations omitted) (emphasis added). A plaintiff "cannot merely lump the [d]efendants together without specifically alleging the liability of each defendant." *Id.* Nor is it sufficient for a plaintiff to "set forth the substance of the alleged defamatory statements" without "specifically identify[ing] who made the statements, when they were made and to whom they were made." *PAI Corp. v. Integrated Sci. Sols., Inc.*, No. C-06-5349 JSW(JCS), 2007 WL 1229329, at *9 (N.D. Cal. Apr. 25, 2007) (plaintiff's claims for libel and slander were inadequately pled).

In the present case, Mandel's SAC fails to allege what defamatory statements were made by Ostovich. There is a relatively specific allegation of a statement made by Hafermann to Tony Seyler at SAC ¶79, providing a date, time, and alleged content of the statement. But no similar specific allegations are made regarding Ostovich. There is a vague allegation of Ostovich and Hafermann continuing "to spread fabricated story throughout Mandel's professional circle" (SAC ¶80). But this is insufficient to meet the "more stringent" standard required of pleading defamation.

## II. THE SECOND CAUSE OF ACTION IN THE SAC IS A NEW CLAIM, FOR WHICH PLAINTIFF FAILED TO SEEK LEAVE OF COURT, AND OTHERWISE FAILS TO STATE A CLAIM.

Plaintiff's Second Cause of Action purports to be for Breach of Contract. In the First Amended Complaint ("FAC"), Plaintiff stated this cause of action as being based on breach of a supposed "New Management Agreement" supposedly entered into on September 26, 2017.

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

Now, Plaintiff states two alternate theories in the same claim:  In ¶¶126-132, Mandel alleges breaches of two Amended Operating Agreements for two Delaware LLCs purportedly executed January 2016 ("Operating Agreement Claims").  In ¶¶ 133-136, Mandel claims alternatively that there was a breach of a management contract lasting from 2010 until its termination by Hafermann in 2017 ("2010 Management Agreement Claims").

These allegations pose numerous issues, mandating dismissal.

A.  **Improper Combination of Alternative Claims in a Single Cause of Action**

Courts have stated that plaintiffs may not plead in the alternative within the same cause of action.

> Although the Federal Rules of Civil Procedure permit plaintiffs
> to plead alternative theories of liability,  plaintiffs do not have the luxury of pleading in
> the alternative within the same cause of action.

*Donahue v. Pendleton Woolen Mills, Inc.,* 633 F. Supp. 1423, 1443–44 (S.D.N.Y. 1986). *See also, E. River Sav. Bank v. Sec'y of Hous. & Urban Dev.,* 702 F. Supp. 448, 459 (S.D.N.Y. 1988) ("Despite the liberal pleading rules in the federal courts, plaintiff may not assert two theories of liability in the same claim.")

B.  **The Operating Agreement Claims in the Second and Fourth Causes of Action are New Claims for which Leave to Add was not Sought.**

The FAC made no mention of these alleged agreements.  Quite plainly, this is an entirely new claim.

This Court's Prior Order was explicit:  "Mr. Mandel may not add any new claims (as opposed to amend previously pled claims) without further leave of court."  The Second Cause of Action's allegations regarding the LLC operating agreements is not an amendment of the existing claim; it is an entirely new claim, leave for which was not sought.

This is not a mere technicality in the present situation.  Had Plaintiff brought a motion for leave, Defendants would have had the opportunity to respond and would have noted that they can find no record of the alleged Amended Operating Agreements; that Plaintiff's counsel, when requested to supply these documents, stated that they did not have the documents in their possession; that these purported documents were never produced or referred to in the Utah

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

proceeding; and that in Mandel's First Amended Complaint, he asserted a 40% ownership interest in the LLCs without any reference to the purported Operating Agreements.[1]  This Court might well have taken a dim view of permitting the addition of the new claim and might very well have mandated that Mandel provide a copy of the newly alleged documents or a credible explanation for the inability to do so.

However, Mandel has bypassed the requirement of seeking leave, and it can be predicted that his counsel will argue that his bare allegations must be accepted as true for Rule 12(b)(6) purposes and that any challenge to the existence of the Amended Operating Agreements will need to await discovery and a motion for summary judgment.

This is gamesmanship and plays fast and loose with the terms of this Court's Prior Order. This Court has the authority to enforce its order and dismiss the new claim.  *Diehl v. Starbucks Corporation* (S.D. Cal., June 17, 2014, No. 12CV2432 AJB (BGS)) 2014 WL 12540524, at *6 (new claim added despite order requiring leave; motion to dismiss granted).  It is respectfully submitted that this Court should insist that the violation of the Prior Order requires dismissal.[2]

**C.  The 2010 Management Agreement Claims in the Second Cause of Action Also Raise a New Claim, For Which Leave Should have been Sought.**

For the same reasons as set forth above, the addition of the 2010 Management Agreement Claims must be viewed as a new claim for which leave was necessary.  Had such leave been sought, moving defendants would have had an opportunity to note to this Court that such an amendment would be futile, because Mandel had filed a sworn declaration in this action stating that the 2010 agreement had been superseded in 2015:

> In late 2015, Hafermann and I sat down to discuss our goals for the future. Hafermann wanted to be a pop star, while I wanted to build a music publishing business. **In order to achieve our respective goals, Hafermann and I agreed to a change to our working relationship. Among other things, I would forego my management fee and any fees for the new duties I was taking on as business manager and put that money back into the business entities—PKM and TBT. Instead of management fees, I would have a 40% equity interest in those entities going forward.**

---

[1] There are also potential statute of limitations issues that might defeat the new claim.
[2] While moving defendants believe dismissal is warranted under Rule 12(b)(6), in the alternative, the claim could also be stricken as "immaterial" matter under Rule 12(f).

1  (Dkt. 71-2, Mandel Declaration in Opposition to Special Motion to Strike, ¶8; emphasis

2  added.)

3       This Court might well have raised questions to Mandel and his counsel on their basis for

4  amendment to add a claim deriving from a 2010 arrangement that Mandel swore was ended in

5  2015.

6      **D. To the Extent Mandel is Attempting to State a Cause of Action for the Purported**
       **"New Management Agreement" Dated September 26, 2017, This Theory Was**

7         **Expressly Rejected by This Court in the Prior Order.**

8

9       The Second Cause of Action incorporates all prior allegations of the SAC.  Therefore, it

10  incorporates ¶34, which alleges in relevant part:  "At the mediation, Hafermann and Mandel

11  entered into a new management contract in which Hafermann agreed to employ Mandel as her

12  manager for a period of five years and pay him, without limitation, 20% of all gross income

13  earned from all of Hafermann's sources of business."  (See also SAC ¶¶ 42-44, 46, 50, 56. 57, 59,

14  60, 62, 64, 85, 95, 102, 110, 194, and 199.)  This Court expressly rejected the "new management

15  agreement" argument in the Prior Order.  This Court determined that the theory was premised on

16  the Divorce Stipulation, and expressly found:  "The Divorce Stipulation is not a contract. It is a

17  court order ,,,"  This Court expressly instructed Mandel that he was not to plead a claim based on

18  this theory.  He has disregarded the Court's order.  From Defendants' review, it appears that

19  Mandel tried to evade the Prior Order by deleting the word "Stipulation" from the SAC while

20  retaining his numerous mentions of the claimed "new management agreement."  This Court

21  should not countenance this ploy.

22

23      **E. To the Extent Mandel is Attempting to State a Cause of Action for the**
       **Management Agreement with Mandel Music Group, LLC (MMG), the Claim**
       **Must be Asserted by MMG, Not Mandel Personally.**

24       According to the SAC, ¶97, Hafermann is alleged to have sent a letter stating that "Holly

25  Brook Hafermann p/k/a "Skylar Grey" has elected to terminate her management relationship with

26  Mandel Music Group."  He also later complains that Rothenberg took on new clients that Mandel

27  had signed to MMG.  (SAC ¶211.)  Mandel alleges that MMG is an LLC formed for management

28  and publishing.  (SAC ¶23.)

WEILL & MAZER
A PROFESSIONAL CORPORATION
2200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

The allegation that the management was with non-party MMG raises significant issues.  It appears that MMG is a party requiring compulsory joinder under Rule 19.

> "Rule 19 governs compulsory party joinder in federal district courts." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005). Under Rule 19(a)(1), the Court may deem parties "necessary" to an action and require them to be joined if: (1) the court cannot accord complete relief in their absence; (2) resolving the action in their absence will impair their ability to protect their interest; or (3) resolving the action in their absence may leave an existing party subject to inconsistent obligations. See Fed. R. Civ. P. 19(a)(1)(A)–(B). The Ninth Circuit holds that "necessary [is] too strong a word" when taken in its colloquial sense; rather, it is a legal term of art that refers to "persons whose joinder in the action is desirable in the interests of just adjudication." *Peabody*, 400 F.3d at 778 (citing Fed. R. Civ. P. 19 Advisory Committee Note (1966) (emphasis added)). A party's designation as "necessary" requires a practical inquiry that is intensely fact specific, designed to avoid the harsh results of rigid application. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.2d 1150, 1154 (9th Cir. 2002). Rule 19(a)'s three prongs notwithstanding, "[t]here is no precise formula for determining whether a party is necessary to an action." *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). Rather, the Ninth Circuit leaves this question to the trial judge's sound discretion. *Bakia v. Cnty. of Los Angeles*, 692 F.2d 299, 301(9th Cir. 1982).

*John Brown University v. Charisma in Missions, Inc.* (C.D. Cal., Mar. 25, 2016, No. 15CV08890ABAGRX) 2016 WL 7448113, at \*5.

This appears to be a situation where resolution without MMG would leave parties subject to potential inconsistent obligations.  In particular, Mandel has shown willingness to relitigate issues and it is predictable that if he does not get judgment he likes in this Court, he will use MMG as a way to get another bite at the apple.

Moreover, Mandel cannot assert the LLC's injury in his individual capacity:

> Sherman lacks standing in his individual capacity to bring any of the pendent claims. Where there is an injury to the corporation, the cause of action should be brought by the corporation, or by the shareholders derivatively if the corporation fails to act; only for separate individual damage does an individual cause of action lie. *Jones v. H. F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969); *Sutter v. General Petroleum Corp.*, 28 Cal.2d 525, 530, 170 P.2d 898, 901 (1946). Sherman lacked standing as a third party beneficiary, since his status was that of an incidental beneficiary. Where there was no direct undertaking or intention to benefit him, he had no rights under such a contract. Restatement of Contracts ss 133, 147; *Martinez v. Sacoma Cos.*, 11 Cal.3d 394, 113 Cal.Rptr. 585, 521 P.2d 841 (1974).

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

*Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 440 (9th Cir. 1979).

Based on the SAC, it appears that it was MMG that was Hafermann's manager, not Mandel personally. Therefore, the claims for breach of management agreement are being brought by the wrong party, and should be dismissed.

## III.   THE THIRD CAUSE OF ACTION FOR PROMISSORY ESTOPPEL ISA REHASH OF THE "NEW MANAGEMENT AGREEMENT" THEORY THAT THIS COURT EXPRESSLY REJECTED IN THE PRIOR ORDER.

The Third Cause of Action, at ¶139, sets forth the premise of the claim as promises Hafermann made on September 26, 2017. This, of course, is the date of the Stipulation in the Utah divorce action. This Court was quite explicit that any amendment to this claim could not be premised on the Stipulation:

> The Divorce Stipulation is not a contract. It is a court order; in fact, Mr. Mandel filed a Motion for Order to Show Cause in Utah State Court regarding Ms. Hafermann's performance under the Divorce Stipulation, the consequence of which was the vacation of the Divorce Stipulation's terms from the Divorce Decree. (Dkt No. 55-8 at 2.) Mr. Mandel's theory that that Stipulation is a contract that is enforceable separate from the Divorce Decree would render the Utah State Court's modification of the Divorce Decree a nullity and thus makes no sense. The Court thus dismisses Mr. Mandel's breach of contract claim against Ms. Hafermann.

> Mr. Mandel's claims for promissory estoppel, unjust enrichment, and breach of the implied covenant of good faith and fair dealing are dismissed for the same reason: they are based on alleged violations of a court order, rather than a contract between the parties. To the extent that Mr. Mandel's claim for wrongful discharge relies on the Divorce Stipulation's terms, it is also dismissed.

> The dismissal of these claims is with leave to amend **should Mr. Mandel be able to plead a claim that is not based on a breach of the Divorce Stipulation that was incorporated into the Divorce Decree**.

(Dkt. 94; emphasis added.)

Mandel has done exactly what this Court told him **not** to do. He has continued to refer to the September 26, 2017 Stipulation as a contract:

> Mandel and Hafermann successfully mediated the settlement of their divorce and division of marital assets in Utah on September 26, 2017. At the mediation, **they signed a written contract** solidifying the new 5-year management contract for Mandel that included a salary of 20% of Hafermann's gross income plus a sunset clause to be written in accordance with

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

industry standards for 5 years after the conclusion of Mandel's Management Contract, should it not be renewed.

(SAC, ¶57.)

Mandel has chosen to disregard the clear finding of this Court that the Stipulation was **not** a contract. His effort to amend the cause of action therefore fails for exactly the same reason as his prior pleading, and should be dismissed without further leave to amend.

### IV. THE FOURTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS PREMISED ON THE PURPORTED 2016 OPERATING AGREEMENTS AND IS A NEW CLAIM FOR WHICH LEAVE WAS NOT SOUGHT OR GRANTED; EVEN IF IT WERE CONSIDERED, IT IS NOT PROPERLY PLEADED UNDER DELAWARE LAW.

As noted in Argument section II B above, the 2016 Operating Agreement Claims are new claims for which leave was necessary before pleading. That is basis enough to dismiss the claim.

But even if this Court were to consider the pleading, the allegations are insufficient. The LLCs are Delaware entities and their Operating Agreements (to the extent they exist at all) would be governed by Delaware law.

Before a claim premised on the implied covenant will be entertained, the plaintiff must identify what is allegedly lacking in the operating agreement:

> CTT's claim for breach of the implied covenant of good faith and fair dealing likewise fails. Courts invoke the implied covenant to fill contractual gaps concerning developments that the parties did not anticipate. In this case, CTT identifies no gaps that require filling.

*Klein v. Wasserman*, No. CV 2017-0643-KSJM, 2019 WL 2296027, at *2 (Del. Ch. May 29, 2019); *see also, Glidepath Ltd. v. Beumer Corp.*, No. CV 12220-VCL, 2019 WL 855660, at *17 (Del. Ch. Feb. 21, 2019), *judgment entered,* (Del. Ch. 2019) ("The Sellers have not identified a gap in the governing documents").

Delaware's requirements of a claim of breach of the implied covenant require specificity of the obligation:

> The implied covenant cannot be invoked to override the express terms of the contract. Moreover, rather than constituting a free floating duty imposed on a contracting party, the implied covenant can only be used conservatively "to ensure the parties' 'reasonable expectations' are fulfilled." Thus, to state a claim for breach of the implied covenant, defendants "must allege a specific implied contractual obligation, a breach of that obligation by [Kuroda], and resulting damage to [defendants]." General allegations of

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

bad faith conduct are not sufficient. Rather, defendants must allege a specific implied contractual obligation and allege how the violation of that obligation denied them the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.

*Kuroda v. SPJS Holdings, L.L.C.*, No. CIV.A. 4030-CC, 2010 WL 925853, at *10 (Del. Ch. Mar. 16, 2010) (applying principles to find improper allegations of implied covenant).

Mandel's Fourth Cause of Action is woefully inadequate under these standards.  He has not attached the purported Operating Agreements (the existence of which is denied by Hafermann) nor has he set forth their substance.  Nor has he identified any "gap" requiring resort to the implied covenant.

The motion to dismiss the Fourth Cause of Action should therefore be granted.

## V.  THE FIFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT DOES NOT LIE.

The premise for Mandel's claim of unjust enrichment is unclear.  He claims that he conferred a benefit by his contribution to Hafermann's success and deserves 40% of the company profits.  But it is quite unclear whether his claim of 40% is derived from his 2016 Amended Operating Agreements claims, his claims deriving from the Stipulation, or something else.

To the extent that the claim is based on the purported 2016 Operating Agreements, as discussed above, that is a new claim for which leave to amend was required and has not been granted.

To the extent that the claim is premised on the Stipulation, this Court has already rejected that theory.

To the extent Mandel means something else, his pleading is too unclear to figure out his allegation, and he should not be given further leave to amend.  Frankly, in the face of this Court's Prior Order, it was incumbent upon Mandel to plead so clearly that the Court could readily determine if Plaintiff had complied.  He has chosen to offer an entirely vague pleading, requiring yet another motion cycle.

Moreover, independent of the above points, the unjust enrichment theory simply does not lie because Mandel has affirmatively pleaded, and submitted a sworn declaration, regarding the existence of actual contracts:

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

It is true that modern rules of pleading generally permit plaintiffs to "set forth alternative theories in varied and inconsistent counts." Thus, if a plaintiff was uncertain as to whether the parties had entered into an enforceable agreement, the plaintiff would be entitled to plead inconsistent claims predicated on both the existence and absence of such an agreement.

**A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter.**

*Klein v. Chevron U.S.A., Inc,.* 202 Cal.App.4th 1342, 1388 [137 Cal.Rptr.3d 293, 330] (2012) (emphasis added). *See also, California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,* 94 Cal.App.4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights"); *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.,* 44 Cal.App.4th 194, 203 (1996) ("it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter").

Thus, the Fifth Cause of Action should be dismissed without leave to amend.

## VI. THE SIXTH CAUSE OF ACTION FOR ALIENATION OF AFFECTIONS SHOULD BE DISMISSED, OR IN THE ALTERNATIVE, REQUIRES A MORE DEFINITE STATEMENT OF FACTS

The Sixth Cause of Action purports to state a claim for alienation of affection. The SAC lacks sufficient factual allegations to plausibly support an inference that Mr. Taylor is liable on this charge. The primary problem is that the SAC does not indicate that any of the conduct constituting Mandel's injury took place in Utah. This Court noted that the FAC had that problem in the Prior Order:

Regarding the conduct causing Mr. Mandel's injury, the FAC alleges that Mr. Taylor had "conversations" with Ms. Hafermann in which he encouraged her to end her marriage, but the FAC does not specify whether these conversations occurred during his trips to Utah, virtually over text message, or in Mr. Taylor's St. Helena, California recording studio. (FAC ¶ 25.) It is these conversations that Mr. Mandel alleges "poison[ed]" Ms. Hafermann's affections, as well as her extramarital affair whose place of occurrence the FAC similarly fails to allege. (Id. ¶¶ 25, 27.) The FAC makes general allegations that Mr. Taylor's Utah visits "started" his

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

campaign to end Ms. Hafermann's marriage, but provide no specific allegations regarding where any conduct that caused Mr. Mandel's injury occurred.

(Dkt. 94, p. 30.)

The SAC does not remedy these shortcomings. In ¶27, Mandel alleges that Taylor "visited" Hafermann, but does not specify the location. In ¶28, Mandel alleges visits, influence, seduction, and lavishing attention, but again no location is stated. The only location mentioned is the building of a studio in California in order to further his alleged purposes. In ¶29, Mandel discusses alleged gifts and email communications, again failing to specify the locations of Taylor or Hafermann. In ¶30, Mandel alleges an adulterous relationship, and in ¶31, he describes finding love letters at the "marital home," but in both cases does not state the location.

The failure to specify the location is conspicuous, and invites the conclusion that the conduct constituting Mandel's injury did **not** take place in Utah, with significant implications for the propriety of the Sixth Cause of Action. Taylor's research has not found any authority supporting the notion that alienation of affection liability can be imposed on a non-Utah resident when all the conduct constituting the injury took place outside of Utah.

In the alternative, Taylor requests that this Court order that Mandel be required to make a more definite statement of his claim, pursuant to Rule 12(e). The nature of Taylor's response to the alienation claim will be greatly affected by whether Mandel is arguing that any of Taylor's conduct took place in Utah, and Taylor is entitled to that level of specificity before responding.[3]

VII.     **THE NINTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.**

In the Prior Order, this Court discussed Mandel's claim against Hafermann for breach of fiduciary duty as follows:

---

[3] In earlier motion proceedings, Taylor declared that other than two film festival trips before he met Hafermann, he never went to Utah for any purpose before Hafermann filed for divorce, and that all his contacts with Hafermann prior to her filing for divorce were in California. (Dkt. 14, ¶¶4-5.)

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

Mr. Mandel does not plausibly allege that Ms. Hafermann owed Mr. Mandel a fiduciary duty. He alleges that she owed a fiduciary duty to TBT and/or PKM—not to Mr. Mandel. (FAC 175.) If she was an employee, how could she possibility owe a fiduciary duty to those companies or Mr. Mandel? Further, what was the intellectual property she allegedly stole and how did she steal the property? Mr. Mandel's claim is dismissed with leave to amend.

Mandel has not fixed the problems from the prior pleading.  The only material change he made to the cause of action was to add ¶185, which reads:

> Hafermann failed to perform her respective fiduciary duties by preventing Mandel, the 40% partner in the companies from being able to work on behalf of the companies and by unilaterally removing Mandel's partnership interests in the companies which was not sanctioned by the company operating agreements.

This does **not** address the Court's concerns.  There is no plausible allegation that Hafermann owed Mandel a fiduciary duty.  The duty, if any, was to the companies.  Mandel persists in his allegation that Hafermann was an employee of the companies (SAC, ¶183), and thus has not addressed this Court's point that she could not owe a fiduciary duty as an employee. Mandel has not identified the intellectual property allegedly stolen or how it was stolen.

Moreover, Mandel's allegation of "stealing valuable intellectual property" that was owned by the Delaware LLCs is a **derivative** claim, not personal. Mandel lacks capacity to make the claim on his own behalf.  Any injury done was to the LLC, not to him directly, and his remedy would be a derivative action:

> That issue must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

Mandel's complete disregard of this Court's specification of the matters to be addressed, and lack of standing to assert the LLC claim, justifies dismissal without leave to amend.

VIII.   **THE TWELFTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONSHIPS (IIER) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.**

In the Prior Order, this Court discussed Mandel's IIER claim against Hafermann as follows:

In California, the elements for an IIER claim are: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). Defendants move to dismiss on the grounds that Mr. Mandel has not alleged any intentional wrong acts separate from the interference itself. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153-54 (2003). The Court agrees. The FAC does not identify the conduct which allegedly constitutes the interference; nor does Mr. Mandel's opposition. Mr. Mandel's argument that the FAC's defamation allegations are alone sufficient to satisfy the elements for an IIER claim is unavailing because the allegedly defamatory conduct is protected by California's litigation privilege and cannot, for this reason, constitute a "wrongful act[]" the claim requires a plaintiff to establish. *Roy Allan*, 2 Cal. 5th at 512; *see also Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal. App. 4th 117, 122 (1995) (holding that the litigation privilege is a defense to claims for intentional interference with economic relations) (citation omitted).

Mandel's allegations in the FAC at ¶199 were as follows:

Hafermann intentionally interfered with Mandel's economic and contractual relations using improper means by, among other things, stealing Mandel's property, publishing defamatory statements concerning Mandel, and wrongfully ousting Mandel from his employment.

Mandel has revised this allegation to read at ¶208 of the SAC:

Hafermann intentionally interfered with Mandel's economic and contractual relations using improper means by, among other things, committing theft on Mandel's property that was essential to his work, publishing defamatory statements concerning Mandel to record executives, publicists and other industry professionals, and wrongfully ousting Mandel from his management position based on allegations Hafermann knew to be false. Hafermann also interfered with Mandel's economic relations when she withheld Mandel's profit share of the companies which Mandel was to use to fund his other business ventures including the new business location that Mandel was just setting up in Nashville.

The revised allegation is insufficient to address the Court's observations.  Mandel persists in including the alleged defamation, including statements made at or in connection with the TRO, as a basis for his claim.  He does not identify the conduct in anything other than conclusory terms.  He has not identified intentional conduct independent from the interference itself.

As to Ostovich, the Court found:

Having determined that California law governs Mr. Mandel's IIER claim against Ms. Ostovich, it is dismissed without prejudice. To the extent that Mr. Mandel's claim is based on Ms. Ostovich's allegedly defamatory statements made in connection with the TRO Proceeding, these are privileged and cannot serve as the basis for an IIER claim. *See Laffer*, 34 Cal. App. 4th at 122. The allegation that Ms. Ostovich intentionally interfered

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

with Mr. Mandel's economic relations by "stealing [his] property" (FAC ¶ 200) is likewise insufficient to sustain an IIER claim because the FAC does not plausibly support an inference that the theft was "designed to disrupt" an unidentified economic relationship or economic relationships. *Korea Supply Co.*, 29 Cal. 4th at 1154.

The version in the FAC stated:

Ostovich intentionally interfered with Mandel's economic and contractual relations using improper means, among other things, by stealing Mandel's property and publishing defamatory statements concerning Mandel.

The version in the SAC states:

Ostovich intentionally interfered with Mandel's economic and contractual relations using improper means, among other things, by burglarizing Mandel's home and committing theft on Mandel's property that was necessary for business and by publishing defamatory statements concerning Mandel other music industry professionals who had the ability to affect whether Mandel received future deals or could even continue doing business in the industry. Ostovich further interfered with Mandel's economic and contractual relations when she unilaterally announced to industry professionals that she was now Hafermann's sole manager, thereby implying Mandel was not. Ostovich also conspired with Rothenberg on December 20, 2017 to  cut Mandel out of the publishing contract Mandel had negotiated and arranged for Mandel's new client Holly Harding. Mandel was cut from the agreement.

The revised allegation is insufficient to address the Court's observations.  Essentially Mandel just repeats the theft and defamation allegations, which the Court had previously found wanting.  He improperly adds two new claims.  First, he alleges that Ostovich engaged in interference by announcing herself to be Hafermann's sole manager and implying that he wasn't. It is hard to see how that can possibly be viewed as interference when Mandel concedes in the pleading that he was in fact terminated as manager and there was nothing wrongful about so stating or implying. Second, he alleges that Ostovich conspired with Rothenberg to cut Mandel out of a publishing contract for Mandel's new client.  Again, this is pleaded in the most conclusory fashion, and it is simply impossible to tell what Mandel is alleging to have happened.

As to Taylor, the Court found:

The FAC is inadequately pleaded for Mr. Mandel's IIER claim against Mr. Taylor to survive at the motion to dismiss stage. Mr. Mandel alleges that Mr. Taylor intentionally interfered with Mr. Mandel's economic relations by alienating the affections of Ms. Hafermann. (FAC ¶ 201.) However, this conclusory allegation does not demonstrate how Mr. Taylor's conduct caused any harm to Mr. Mandel's unidentified economic relations. Accordingly, Mr. Mandel has failed to satisfy the elements required for IIER claims under Utah law, *see Davidson*, 438 P.3d at 945, and is dismissed with leave to amend.

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

The version in the FAC stated:

> Taylor intentionally interfered with Mandel's economic and contractual relations using improper means, among other things, by alienating the affections of Hafermann.

The version in the SAC states:

> Taylor intentionally interfered with Mandel's economic and contractual relations using improper means, among other things, by alienating the affections of Hafermann. Taylor successfully seduced and convinced Hafermann to leave her marriage with Mandel. Taylor then put pressure on Hafermann to also end her business relationship with Mandel and supported and cheered Hafermann's tortious method of ending the business relationship.

The revised allegation is insufficient to address the Court's observations.  Once again, we see a highly conclusory allegation that Taylor put pressure on Hafermann to end her business relationship with Mandel.  The mere allegation that a current boyfriend put pressure on his girlfriend to curtail contact with an ex does not suffice to constitute IIER, and defendants can find no authority supporting such a theory.

## IX. **THE THIRTEENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.**

In the Prior Order, this Court discussed Mandel's IIER claim against Hafermann as follows:

> Mr. Mandel has failed to meet his burden to allege facts that plausibly support an inference that Ms. Hafermann's conduct was extreme and outrageous. While Mr. Mandel argues in his opposition that Ms. Hafermann does not offer authority in support of the proposition that stealing property cannot constitute outrageous conduct (Dkt. No. 72 at 21), even taking as true the allegation that she stole Mr. Mandel's computer hard drives, theft's illegality does not make it outrageous. *See Chard*, 456 P.3d at 791. Mr. Mandel's second argument that it is the jury's role to determine whether Ms. Hafermann's conduct was outrageous overlooks that a court makes the threshold determination if a defendant's conduct may "reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.*

> Ms. Hafermann's alleged theft of Mr. Mandel's hard drives is not extreme or outrageous. Nor can the Utah State Court's modification of the Divorce Decree constitute extreme or outrageous conduct. Furthermore, Ms. Hafermann's allegedly defamatory statements are privileged and cannot serve as a predicate for Mr. Mandel's IIED claim. Ms. Hafermann's statements made in connection with the TRO Proceeding that support Mr. Mandel's defamation claims satisfy the elements for Utah's "judicial proceeding privilege" as well as the elements for California's litigation privilege. Utah law requires that a statement be "(1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

judge, juror, witness, litigant, or counsel." *Pratt v. Nelson*, 164 P.3d 366, 376 (2007) (internal quotation marks and citations omitted). Statements made "preliminary to a proposed judicial proceeding" and pretrial statements satisfy this first element. *Id.* For the same reasons Ms. Hafermann's statements made in connection with the TRO Proceeding are privileged under California law, so too are they privileged under Utah's judicial proceeding privilege.

In the FAC, the allegation read:

Hafermann engaged in wrongful conduct, among other things, by stealing Mandel's property, publishing defamatory statements concerning Mandel, and wrongfully ousting Mandel from his employment.

In the SAC, the allegation now reads:

Hafermann engaged in wrongful conduct, among other things, by stealing Mandel's property, ousting Mandel from a 5-year employment agreement, withholding all of Mandel's 40% stake in the company profits over the course of 4 years and counting, and publishing defamatory statements concerning Mandel to professionals in Mandel's professional industry, wherein Hafermann's allegations were so repulsive that Mandel can no longer work in his professional field and his almost decade long career is completely destroyed.

The revised allegation is insufficient to address the Court's observations. Mandel continues to allege theft and defamatory statements, which the Court has already found to be insufficient. The only new allegation is of Hafermann's breach of the employment arrangement, but that is a pure breach of contract issue for which an IIED claim will not lie.

Normally "there is no recovery of damages for mental anguish stemming from a breach of contract." This is so because "an award of damages in a breach of contract case attempts to 'place the aggrieved party in the same economic position the party would have been in if the contract was not breached.' "

*Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 28, 424 P.3d 897, 904.

As to Ostovich, the Prior Order found:

Mr. Mandel's claim against Ms. Ostovich fails for the same reason. Taking as true the allegation that Ms. Ostovich stole Mr. Mandel's hard drives, conduct's illegality does not make it "utterly intolerable[,]" *Chard*, 456 P.3d at 791 (2019), and making allegedly defamatory comments in connection to the TRO Proceeding likewise fail to meet the standard to make out an IIED claim because they are privileged, *see Pratt*, 164 P.3d at 376. Mr. Mandel, therefore, has failed to meet his burden of showing that Ms. Ostovich intentionally inflicted emotional distress.

The allegations against Ostovich in the FAC were:

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

Ostovich engaged in wrongful conduct, among other things, by stealing Mandel's property and publishing defamatory statements concerning Mandel.

The allegations in the SAC are:

Ostovich engaged in wrongful conduct, among other things, by stealing Mandel's property, ousting him as Hafermann's manager, and publishing defamatory statements concerning Mandel that just as with Hafermann, have completely destroyed Mandel's career.

The revised allegation is insufficient to address the Court's observations, for the same reasons as outlined as to Hafermann, *supra*.

As to Taylor, the Prior Order found:

Here, Mr. Mandel's allegations against Mr. Taylor are impermissible conclusions rather than well-pleaded facts. The FAC alleges that Mr. Taylor engaged in "wrongful" behavior by alienating Ms. Hafermann's affections, and that this behavior is the proper predicate for an IIED claim. (FAC ¶ 214.) Earlier in the FAC, Mr. Mandel provides a timeline of Mr. Taylor's involvement with Ms. Hafermann, at one point going so far as to say that he used his wealth and charm to "poison [Ms. Hafermann's] affection of [Mr.] Mandel." (FAC ¶ 25.) The FAC describes Mr. Taylor's conduct as an "intrusion" into the marriage, but otherwise offers declarative allegations regarding when Mr. Taylor and Ms. Hafermann began their extramarital affair and their efforts to conceal it from Mr. Mandel. (FAC ¶ 27, 30.) Unless every person who entices a married spouse into an extramarital affair engages in intentional infliction of emotional distress Mr. Mandel's allegations are far too conclusory to plausibly support an inference of liability on this claim.

The allegations against Taylor in the FAC were:

Taylor engaged in wrongful conduct, among other things, by alienating the affections of Mandel's wife.

The allegations in the SAC are:

Taylor engaged in wrongful conduct, among other things, by alienating the affections of Mandel's wife, destroying Mandel's marriage, and pressuring Hafermann to also end her business relationship with Mandel.

The revised allegation is insufficient to address the Court's observations. It is indistinguishable from the earlier allegation.

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

## X. THE FOURTEENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED) IS DEFICIENT AND FAILS TO ADDRESS THE ISSUES RAISED IN THE PRIOR ORDER.

In the Prior Order, this Court discussed Mandel's IIER claim against Hafermann and Ostovich, governed by California law, as follows:

> Mr. Mandel has failed to allege facts sufficient to support an inference that Ms. Hafermann or Ms. Ostovich owed a duty the likes of which these cases illustrate. The FAC's allegation that Defendants "should have realized that their conduct could cause the sort of emotional distress that might result in illness or bodily harm" is not only implausible—how the theft of hard drives, for instance, could induce illness or cause bodily harm is, to say the least, not even pleaded—but is a conclusory allegation regarding Mr. Mandel's distress that does not illuminate what duty any Defendant owed him. (FAC ¶ 225.) Absent allegations of threatened physical injury, allegations of defamation, theft, wrongful termination, and adversarial lawyering are not enough to make out "the type of duty that California courts would find sufficient to state a claim for [NIED]." *Chaconas*, 713 F. Supp. 2d at 1187.

Mandel's allegations in this regard in the FAC ¶225 was:

> Defendants should have realized that their conduct could cause the sort of emotional distress that might result in illness or bodily harm.

**The allegation in the SAC at ¶234 is word-for-word the same.** Mandel has made no effort to address the defect noted by the Court. Nor has Mandel added allegations of threatened physical injury.

Mandel's complete disregard of the ruling of the Court justifies dismissal of this cause of action without leave to amend.

## XI. THE FIFTEENTH CAUSE OF ACTION FOR CONSPIRACY SHOULD BE DISMISSED.

In the Prior Order, this Court noted:

> In alleging a civil conspiracy to commit a tort, courts within the Ninth Circuit have held that "conclusory [allegations that are] ... not supported by any factual allegations" or "allegations [that] are merely recitations of the elements of the claim ... fail to state a claim under the Twombly standard." Tuggle v. City of Tulare, No. 1:19-cv-01525-NONE-SAB, 2020 WL 3977892, at *2-3 (E.D. Cal. July 14, 2020) (collecting cases) ("[T]he FAC provides no factual details that directly or indirectly suggest the existence of a conspiracy . . . [the counter-claimants] provide little more than conclusory allegations to allege their conspiracy to commit assault and battery claim[.]")

Mr. Mandel has failed to state a claim under the *Twombly* standard. Regarding the alleged conspiracy, he states only that Defendants formed an agreement to accomplish wrongful objectives and that they had a meeting of the minds to accomplish these objectives. (FAC

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730

¶¶ 231-32.) The FAC offers no supporting factual allegations that suggest the existence of a conspiracy and, as such, Mr. Mandel's claim is dismissed with leave to amend.

The allegations of ¶¶ 231-32 in the FAC to which the Court referred were:

231. Each of the Defendants combined and formed an agreement with the others to accomplish unlawful and wrongful objectives as set forth in this Complaint.

232. Each of the Defendants had a meeting of the minds with the others to accomplish unlawful objectives.

In the SAC, Mandel has repeated these allegations as ¶¶ 240-241 verbatim.  He has made no effort to alter these allegations at all or otherwise address the Prior Order.

This is sufficient reason to dismiss the Fifteenth Cause of Action, and this is also in keeping with another point noted in the Prior Order: "Under California law, a civil conspiracy is not considered an independent tort".

## CONCLUSION

Mandel has failed to fix the problems noted in the Prior Order, and has further muddied the matter by adding new claims in violation of being ordered not to do so without leave.  The First, Second, Third, Fourth, Fifth, Sixth, Ninth, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action fail to state claims upon which relief can be granted. The motion to dismiss should be granted without leave to amend.  In the alternative, as to the Sixth Cause of Action, a more definite statement should be required.

Dated: February 3, 2021                    Respectfully submitted,

                                           WEILL & MAZER, APC


                                By:        _____/S/_____
                                           Andrew J. Weill
                                           Attorney for Defendants

WEILL & MAZER
A PROFESSIONAL CORPORATION
200 CALIFORNIA STREET, SUITE 400
SAN FRANCISCO, CA 94111
(415) 421-0730