A. SASHA FRID (State Bar No. 216800)
sfrid@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
JESSICA P.G. NEWMAN (State Bar No. 309170)
jnewman@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendants
PAUL ROTHENBERG and ROTHENBERG, P.C.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

TODD MANDEL, an individual,

Plaintiff,

v.

HOLLY HAFERMANN, doing business as SKYLAR GREY; VANESSA OSTOVICH; ELLIOTT TAYLOR; PAUL ROTHENBERG; and ROTHENBERG, P.C.,

Defendants.

**CASE NO. 3:20-cv-03668-JSC**

**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO C.C.P § 425.16; AND REQUEST FOR ATTORNEYS' FEES AND COSTS (C.C.P. § 425.16(c)(1))**

[*Filed Concurrently with Declaration of Paul Rothenberg; Request for Judicial Notice; and* [*Proposed*] *Order*]

Date: March 11, 2021
Time: 9:00 a.m.
Ctrm.: E

Assigned for All Purposes to Magistrate Judge Jacqueline Scott Corley, Ctrm. E

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 11, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom E of the United States District Court for the Northern District of California, located at Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Paul Rothenberg and Rothenberg, P.C. (together, "Rothenberg") will, and hereby do, move this Court, pursuant to California Code of Civil Procedure section 425.16, for an order striking the First, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action in the Second Amended Complaint filed by Plaintiff Todd Mandel ("Plaintiff" or "Mandel"), and striking the allegations on which the claims are based.

Section 425.16—known as the "anti-SLAPP" statute—is a means to quickly dispose of causes of action arising from a defendant's exercise of his or her constitutional right to petition for redress of grievances. The anti-SLAPP analysis is a two-prong inquiry: (1) the defendant must show that the claims arise from protected activity; and (2) the burden then shifts to the plaintiff to produce admissible evidence to demonstrate a probability of prevailing on the merits. *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016).

Here, the alleged conduct and communications in support of all seven claims against Rothenberg—defamation, breach of contract, breach of fiduciary duty, intentional interference with economic relations, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy—constitute protected litigation activity and fall squarely under section 425.16(e)(2): "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law."

Moreover, the alleged conduct and communications underlying all of the claims against Rothenberg constitute protected speech in connection with a public issue and fall squarely under section 425.16(e)(3) and (4): "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; and "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

right of free speech in connection with . . . an issue of public interest."

Because the claims arise from protected activity, the burden shifts to Plaintiff to demonstrate a probability of prevailing on his claims. This he cannot do.

The claims are all predicated on alleged conduct that is protected by the litigation privilege under California Civil Code section 47(b). Rothenberg's legal advice and communicative acts on behalf of his clients are absolutely privileged. Similarly, discussion of the contents of the TRO, either in the hours leading up to its filing or in the weeks that followed, is also protected by the litigation privilege. These purported communications are "connected" and "logically related" to a judicial action, rendering them absolutely privileged.

All of the claims are also predicated on alleged conduct that is protected by the fair reporting privilege under California Civil Code section 47(d). For these and other reasons, Plaintiff cannot demonstrate probable success to satisfy the second prong of the anti-SLAPP inquiry.

Furthermore, all of Mandel's claims are barred by the Agent's Immunity Rule, as the allegation that Rothenberg improperly conspired with his client is central to each cause of action. The Agent's Immunity Rule, codified in California Civil Code section 1714.10, prohibits filing an action against a lawyer for conspiring with his own client without prior court authorization. Mandel failed to follow these procedures.

Pursuant to section 425.16(c)(1), Rothenberg is entitled to recover the attorneys' fees and costs incurred in connection with the Motion.

The Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Paul Rothenberg, the Request for Judicial Notice and exhibits thereto, all pleadings and papers on file in this action, any oral argument the Court may entertain on the Motion, and any other matter the Court deems just and proper.

DATED: February 3, 2021

Respectfully Submitted,

MILLER BARONDESS, LLP

By: ______________________________

A. SASHA FRID
Attorneys for Defendants
PAUL ROTHENBERG and ROTHENBERG, P.C.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

494916.4

4

Case No. 3:20-cv-03668-JSC

SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT; AND REQUEST FOR ATTORNEYS' FEES AND COSTS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..... 12

II. FACTS ..... 14

A. Rothenberg's Representation Of Hafermann ..... 14

B. Rothenberg's Dealings With Mandel ..... 14

C. The Divorce Proceeding ..... 15

D. The TRO Proceedings And Press Coverage ..... 15

E. Mandel's Allegations In The SAC ..... 16

III. PROCEDURAL HISTORY / CALIFORNIA LAW APPLIES ..... 18

IV. LEGAL STANDARD ..... 19

V. PRONG ONE: THE CLAIMS ARISE FROM PROTECTED ACTIVITY ..... 20

A. All Of Mandel's Claims Arise From Protected Litigation Activity ..... 21

1. Rothenberg's Alleged Statements to News Editors and Publicists ..... 21

2. Rothenberg's Alleged Legal Advice to Mandel ..... 22

3. Rothenberg's Alleged "Adverse Representation" of Hafermann ..... 23

B. All Of Mandel's Claims Arise From Speech In Connection With A Public Issue ..... 24

C. Mandel's Conclusory "Breach Of Fiduciary Duty" Allegations Do Not Destroy The Protections Of The Anti-SLAPP Statute ..... 25

VI. PRONG TWO: PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY OF HIS BASELESS CLAIMS ..... 26

A. The Litigation Privilege Bars All Of Mandel's Claims ..... 26

B. The Fair Reporting Privilege Bars All Of Mandel's Claims ..... 28

C. The Agent's Immunity Rule Bars All Of Mandel's Claims ..... 29

D. The Defamation Claim Fails For Additional Reasons ..... 30

1. The Defamation Claim Is Time-Barred ..... 30

2. The Court's Order Prohibited New Causes Of Action ..... 30

E. The Breach Of Contract And Breach Of Fiduciary Duty Claims Fail ..... 31

F. Mandel's Interference Claim Is Legally Defective ..... 33

1. Rothenberg's Advice to Clients Cannot Be a Basis for Interference ..... 33

2. Mandel Cannot Show "Independently Wrongful" Conduct ..... 33

G. Mandel's Claims For IIED And NIED Fail ..... 34

1. There Is No Evidence of Extreme and Outrageous Conduct ..... 34

2. Mandel Cannot Show That Rothenberg Owed Him a Special Duty ............ 35

H. Conspiracy Is Not An Independent Cause Of Action ............ 35

VII. THE COURT SHOULD GRANT THE MOTION WITH PREJUDICE ............ 36

VIII. CONCLUSION ............ 36

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

494916.4 6 Case No. 3:20-cv-03668-JSC

SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT; AND REQUEST FOR ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*A&T Mobility LLC*,
No. 2:13-CV-00007-KJM-DB, 2017 WL 4340198, at *3 .......... 33

*Azadpour v. Sun Microsystems, Inc.*,
No. C06-03272 MJJ, 2007 WL 2141079 (N.D. Cal. July 23, 2007) .......... 23

*Barragan v. Deutsche Bank Nat'l Tr. Co.*,
No. CV 15-02614 DDP (FFMx), 2015 WL 3617104 (C.D. Cal. June 9, 2015) .......... 32

*Flores v. Emerich & Fike*,
416 F. Supp. 2d 885 (E.D. Cal. 2006) .......... 28, 30, 31

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) .......... 27

*Harper v. Lugbauer*,
No. C 11-01306 JW, 2012 WL 1029996 (N.D. Cal. Mar. 15, 2012), *aff'd*, 709 F. App'x 849 (9th Cir. 2017) .......... 37

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) .......... 26

*L.A. Airways, Inc. v. Davis*,
687 F.2d 321 (9th Cir. 1982) .......... 34

*Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*,
No. 18-cv-034120-BLF, 2020 WL 1082764 (N.D. Cal. Mar. 6, 2020) .......... 21

*Pistoresi v. Madera Irrigation Dist.*,
No. CV-F-08-843-LJO-DLB, 2009 WL 256755 (E.D. Cal. Feb. 3, 2009) .......... 37

*Polk v. Lattimore*,
No. 1:12-cv-01156-DAD-BAM (PC), 2018 WL 2183877 (E.D. Cal. May 11, 2018), *report and recommendation adopted in part*, 2018 WL 5794519 (E.D. Cal. Nov. 5, 2018) .......... 23

*Raceway Props., LLC v. LSOF Carlsbad Land L.P.*,
157 F. App'x 959 (9th Cir. 2005) .......... 30

*Shieh v. Ebershoff*,
15 F.3d 1089 (9th Cir. 1993) .......... 30

*Traverso v. Eller Media Co.*,
No. C 97-1254 SI, 2002 WL 467717 (N.D. Cal. Mar. 25, 2002) .......... 33

*Wang & Wang LLP v. Banco Do Brasil S.A.*,
No. 2:06-CV-00761-JAM-KJM, 2009 WL 530135 (E.D. Cal. Mar. 3, 2009) .......... 32

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**STATE CASES**

*1-800 Contacts, Inc. v. Steinberg*,
107 Cal. App. 4th 568 (2003)....................37

*Adams v. Superior Court*,
2 Cal. App. 4th 521 (1992)....................28

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994)....................37

*Argentieri v. Zuckerberg*,
8 Cal. App. 5th 768 (2017)....................29, 30

*Averill v. Superior Court*,
42 Cal. App. 4th 1170 (1996)....................26

*Bel Air Internet, LLC v. Morales*,
20 Cal. App. 5th 924 (2018)....................22

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*,
131 Cal. App. 4th 802 (2005)....................15, 30, 31

*Bergstein v. Stroock & Stroock & Lavan LLP*,
236 Cal. App. 4th 793 (2015)....................27, 28

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007)....................33

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999)....................22, 24, 25

*Burgess v. Superior Court*,
2 Cal. 4th 1064 (1992)....................36

*Cabral v. Martins*,
177 Cal. App. 4th 471 (2009)....................24, 25

*CDF Firefighters v. Maldonado*,
158 Cal. App. 4th 1226 (2008)....................32

*Chavez v. Mendoza*,
94 Cal. App. 4th 1083 (2001)....................21

*Cochran v. Cochran*,
65 Cal. App. 4th 488 (1998)....................35

*Comstock v. Aber*,
212 Cal. App. 4th 931 (2012)....................21

*Contemporary Servs. Corp. v. Staff Pro Inc.*,
152 Cal. App. 4th 1043 (2007)....................35

*Contreras v. Dowling*,
5 Cal. App. 5th 394 (2016)....................14, 24, 25

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

*Costa v. Superior Court*,
157 Cal. App. 3d 673 (1984)....................28

*Davidson v. City of Westminster*,
32 Cal. 3d 197 (1982)....................35

*Dean v. Friends of Pine Meadow*,
21 Cal. App. 5th 91 (2018)....................28, 37

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
47 Cal. App. 4th 777 (1996)....................22

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
238 Cal. App. 4th 200 (2015)....................14

*Fox Searchlight Pictures, Inc. v. Paladino*,
89 Cal. App. 4th 294 (2001)....................21

*Friedman v. Merck & Co.*,
107 Cal. App. 4th 454 (2003)....................36

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*,
184 Cal. App. 4th 1539 (2010)....................23

*Hall v. Time Warner, Inc.*,
153 Cal. App. 4th 1337 (2007)....................26

*Healy v. Tuscany Hills Landscape & Recreation Corp.*,
137 Cal. App. 4th 1 (2006)....................22, 23, 27, 28

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*,
247 Cal. App. 4th 87 (2016)....................29

*Kenne v. Stennis*,
230 Cal. App. 4th 953 (2014)....................28, 37

*Klotz v. Milbank, Tweed, Hadley & McCloy*,
238 Cal. App. 4th 1339 (2015)....................30, 31

*Koo v. Rubio's Rests., Inc.*,
109 Cal. App. 4th 719 (2003)....................32

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003)....................35

*Lund v. Gifford*,
No. B259366, 2016 WL 7031517 (Cal. Ct. App. Dec. 2, 2016)....................25

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*,
48 Cal. 3d 583 (1989)....................36

*Molien v. Kaiser Found. Hosps.*,
27 Cal. 3d 916 (1980)....................36

494916.4 9 Case No. 3:20-cv-03668-JSC
SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT; AND REQUEST FOR ATTORNEYS' FEES AND COSTS

*Navarro v. IHOP Props., Inc.*,
134 Cal. App. 4th 834 (2005)........................................................................28

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002)........................................................................27

*Neville v. Chudacoff*,
160 Cal. App. 4th 1255 (2008)........................................................................22, 23

*Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008)........................................................................26

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
18 Cal. App. 5th 95 (2017)........................................................................24, 25

*Peper v. Gannett Co., Inc.*,
No. 2002061753, 2003 WL 22457121 (Cal. Super. Ct. Apr. 4, 2003),
*aff'd*, Nos. A102831, A103464, 2004 WL 2538839 (Cal. Ct. App. Nov. 10, 2004)............29

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
133 Cal. App. 4th 658 (2005)........................................................................27

*Pettitt v. Levy*,
28 Cal. App. 3d 484 (1972)........................................................................28

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965 (1993)........................................................................36

*Roberts v. L.A. Cty. Bar Ass'n*,
105 Cal. App. 4th 604 (2003)........................................................................14, 21

*Ross v. Creel Printing & Publ'g Co.*,
100 Cal. App. 4th 736 (2002)........................................................................36

*Rubin v. Green*,
4 Cal. 4th 1187 (1993)........................................................................24, 25, 27

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006)........................................................................14, 28

*Salma v. Capon*,
161 Cal. App. 4th 1275 (2008)........................................................................20, 21

*Schick v. Lerner*,
193 Cal. App. 3d 1321 (1987)........................................................................34

*Seltzer v. Barnes*,
182 Cal. App. 4th 953 (2010)........................................................................22

*Shively v. Bozanich*,
31 Cal. 4th 1230 (2003),
*as modified* (Dec. 22, 2003)........................................................................31, 32

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990), *as modified* (Mar. 12, 1990)........................................27, 28, 29

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

*Simmons v. Allstate Ins. Co.*,
92 Cal. App. 4th 1068 (2001) ..... 37

*Sprengel v. Zbylut*,
40 Cal. App. 5th 1028 (2019) ..... 33

*Terry v. Davis Cmty. Church*,
131 Cal. App. 4th 1534 (2005) ..... 26

*Thayer v. Kabateck Brown Kellner LLP*,
207 Cal. App. 4th 141 (2012) ..... 22, 24, 25

*Unterberger v. Red Bull N. Am., Inc.*,
162 Cal. App. 4th 414 (2008) ..... 35

*Wilson v. Parker, Covert & Chidester*,
28 Cal. 4th 811 (2002), *superseded by statute on other grounds* ..... 21

*Yurick v. Superior Court*,
209 Cal. App. 3d 1116 (1989) ..... 35

*Zenith Ins. Co. v. O'Connor*,
148 Cal. App. 4th 998 (2007) ..... 32, 33

**STATE STATUTES**

Cal. Civ. Code § 1714.10 ..... 30, 31

Cal. Civ. Code § 47(b) ..... 14, 27

Cal. Civ. Code § 47(c) ..... 21

Cal. Civ. Proc. Code § 340(c) ..... 31

Cal. Civ. Proc. Code § 340.6 ..... 33

Cal. Civ. Proc. Code § 425.16(b)(1) ..... 13, 14, 20, 27

Cal. Civ. Proc. Code § 425.16(b)(2) ..... 20

Cal. Civ. Proc. Code § 425.16(c)(1) ..... 21

Cal. Civ. Proc. Code § 425.16(e) ..... 21, 26

Cal. Civ. Proc. Code § 425.16(e)(2) ..... 22, 23, 25

Cal. Civ. Proc. Code § 425.16(e)(3) ..... 26

Cal. Civ. Proc. Code § 425.16(e)(3)-(4) ..... 26

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

494916.4
11
Case No. 3:20-cv-03668-JSC
SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT; AND REQUEST FOR ATTORNEYS' FEES AND COSTS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## I. INTRODUCTION

Plaintiff's claims against Rothenberg in this case are wrought with incurable legal defects that Mandel cannot overcome.

The original iteration of the claims against Rothenberg—the First Amended Complaint ("FAC")—was based on three (untrue) allegations: Rothenberg's legal advice to Hafermann, his own client, to file a TRO; Rothenberg's legal advice to Hafermann to terminate Plaintiff as her manager; and Rothenberg's notifying news outlets about the TRO. Under long-established California law, these claims were based on privileged petitioning activity and protected under the anti-SLAPP statute, Code of Civil Procedure section 425.16(b)(1). The Court dismissed the FAC but gave Mandel leave to amend to attempt to plead an actionable claim.

Plaintiff's Second Amended Complaint ("SAC") attempts to allege new facts (also untrue) to try to circumvent the Court's anti-SLAPP ruling. It fails. The new theory is that Rothenberg was actually *Plaintiff*'s lawyer all along; and that Rothenberg's legal advice to Hafermann and communications on her behalf were all part of a secret plan to push out Plaintiff as Hafermann's manager and breach fiduciary duties owed to Plaintiff. Plaintiff now also alleges that Rothenberg was part of a grand scheme with Hafermann to ruin Plaintiff's career by fabricating the allegations in the TRO and spreading them to a host of music industry professionals (including the media) both before and after the TRO was filed. These newly manufactured allegations do not save Plaintiff's claims from California's anti-SLAPP statute.

The SAC asserts seven causes of action against Rothenberg: defamation; breach of contract; breach of fiduciary duty; intentional interference with economic relations; intentional and negligent infliction of emotional distress; and conspiracy. Plaintiff's claims against Rothenberg boil down to the following: (1) notifying news outlets (and other "industry professionals") about the TRO; (2) legal advice to Hafermann (his actual client) and Mandel (his purported client) about settlement in the divorce proceeding; (3) sending Mandel a termination letter on Hafermann's behalf; and (4) negotiating with Mandel on Hafermann's behalf in the divorce proceeding.

None of this has any truth. Rothenberg did not badmouth Mandel to entertainment news editors, publicists or anyone else—either before or after the TRO was filed. The SAC is also based

on the contrived contention that Rothenberg was Mandel's lawyer when, in fact, Rothenberg never represented him in any capacity.

Assuming these claims were truthful, Mandel cannot assert claims for this conduct. Under California law, Mandel's claims are all based on privileged conduct and should be stricken. The alleged conduct constitutes protected activity "in furtherance of [Rothenberg's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). The anti-SLAPP statute allows an early substantive challenge to such claims. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006).

The anti-SLAPP statute has two prongs. Prong one requires Rothenberg to show that the claims against him "arise from" protected activity. Indeed, Mandel's claims are based on paradigmatic protected activity: legal advice to clients protected by the litigation privilege; petitioning activity on behalf of clients; and statements regarding issues of public concern. *Contreras v. Dowling*, 5 Cal. App. 5th 394, 408-09 (2016). Every claim in the SAC is premised on Rothenberg's alleged defamation of Mandel which was the subject of the TRO.

Under prong two, Mandel bears the burden of showing through "competent, admissible evidence" a probability of success on his claims. *Roberts v. L.A. Cty. Bar Ass'n*, 105 Cal. App. 4th 604, 613-14 (2003). He cannot do so.

All of the claims against Rothenberg are barred by the litigation privilege, Civil Code section 47(b). This privilege is an absolute bar to tort claims based on statements relating to judicial proceedings. It protects an attorney's legal advice to clients, pre-litigation communications and settlement discussions. "Without the litigation privilege, attorneys would simply be unable to do their jobs properly." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212 (2015). Indeed, the Court already found that Rothenberg's allegedly notifying news outlets about the TRO is protected by the litigation privilege.

Similarly, the fair reporting privilege in Civil Code section 47(d) absolutely protects accurate statements to the press about judicial proceedings. All of Mandel's claims are based on this alleged conduct by Rothenberg.

Nor can Mandel produce any evidence that he and Rothenberg had a "legal services

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

contract" or that Rothenberg was his attorney. Without any evidence to support this, Mandel cannot demonstrate that Rothenberg owed, let alone breached, any duties to Mandel.

Mandel's claims are also barred by California's Agent's Immunity Rule. This rule bars claims against an attorney for conspiring with his client without prior authorization and applies to all claims which "derive their vitality from incorporated conspiracy-based allegations." *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 836 (2005). Here, every claim turns on Rothenberg's alleged conspiracy with his client, Hafermann.

Mandel's claims against Rothenberg suffer from other fatal defects, set forth in detail below. To that end, Rothenberg respectfully requests that the Court strike the claims against him and the allegations on which they are based, with prejudice, and award him attorneys' fees and costs in connection with the Motion.

## II. FACTS

### A. Rothenberg's Representation Of Hafermann

Paul Rothenberg is an experienced entertainment attorney. (Declaration of Paul Rothenberg ("Rothenberg Decl.") ¶ 3.) In 2008, he began representing Hafermann, a singer-songwriter and record producer. (*Id.* ¶ 4.) This was a year before she met Mandel. (SAC ¶ 11.) Rothenberg and his current firm, Rothenberg, Mohr & Binder, LLP, still represent Hafermann. (*Id.*)

For over ten years, Rothenberg has given Hafermann legal advice on all aspects of her career. (Rothenberg Decl. ¶ 5.) He advises Hafermann on record deals, publishing deals and touring and structuring agreements with managers and producers; and he negotiates these agreements on her behalf. (*Id.*) Rothenberg has continuously represented Hafermann before, during and after her marriage to Mandel. (*Id.*)

### B. Rothenberg's Dealings With Mandel

Rothenberg has been representing Hafermann since before she even met Mandel. At all times he has known Rothenberg, Mandel was aware that Rothenberg was Hafermann's attorney; and that Hafermann was Rothenberg's client. (Rothenberg Decl. ¶ 4.)

While Hafermann was married to Mandel, Rothenberg had to deal with Mandel because he was Hafermann's manager. (Rothenberg Decl. ¶ 6.) This is common for music artists who have

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

various professionals supporting their artistic, business, touring, recording and other activities. (*Id.* ¶ 7.). A music lawyer works with each of these professionals, as Rothenberg did for Hafermann, but no separate attorney-client relationship exists. (*Id.*) Mandel and Rothenberg were both service providers for Hafermann, working hand-in-hand to benefit their mutual client. (*Id.)*

Mandel has never been a client of Rothenberg. (*Id.* ¶ 6.) He never engaged Rothenberg as his attorney or paid him for any legal services. (*Id.*) Rothenberg never represented Mandel in any capacity. (*Id.*) There is no legal services contract between them, and there never has been. (*Id.*)

**C. The Divorce Proceeding**

In May of 2017, Hafermann and Mandel separated. (SAC ¶ 31.) On June 12, 2017, Hafermann filed for divorce. (*Id.* ¶ 32.) On September 26, 2017, Hafermann and Mandel settled their divorce at mediation; and they signed a Stipulation for Entry of Decree of Divorce (the "Stipulation") memorializing the settlement, which included a request for court approval. (Request for Judicial Notice ("RJN") Ex. A.) In the SAC, Mandel refers to the Stipulation as the "new management contract." (SAC ¶ 34). The Stipulation was not approved until November 6, 2017, when the divorce court entered a Decree (the "Decree"). (RJN Ex. B.) The Decree went into effect on January 1, 2018. (*Id.*)

Pursuant to the Stipulation, Mandel and Hafermann agreed to "work together with Paul Rothenberg to negotiate and execute a new management agreement" containing a five-year term and sunset clause "pursuant to Mr. Rothenberg's advice." (RJN Ex. A, ¶ 15.) Ultimately, Hafermann and Mandel never agreed on final terms and never executed a new agreement.

**D. The TRO Proceedings And Press Coverage**

At a party on December 13, 2017 in Malibu, Hafermann learned that Mandel, her ex-husband, had been stalking her and her now-fiancé, Defendant Elliott Taylor. (RJN Ex. D.) Hafermann learned that Mandel had installed hidden cameras and recording devices in her apartment, and that he hired a private investigator and attorneys to track them. (*Id.*) Hafermann also learned that Mandel had screenshots on his phone of private messages and pictures of her that he should not have had access to, and that he threatened to physically hurt her. (*Id.*)

The next morning Hafermann fled Los Angeles. On the next day, December 15, 2017, in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

serious fear of her physical safety, Hafermann filed a civil TRO against Mandel in the Los Angeles Superior Court. (RJN Exs. D-E.) On the same day, Hafermann formally terminated Mandel as her manager. (Rothenberg Decl. ¶ 11; SAC ¶ 97.) Rothenberg, her attorney, sent the termination letter on her behalf. (Rothenberg Decl. ¶ 11 & Ex. A.)

Hafermann was represented by the undersigned litigation counsel at Miller Barondess in the TRO proceedings. (RJN Ex. D.) The TRO was granted based on "a credible threat of violence . . . or stalking." (*Id.* Ex. E.) The court ordered Mandel not to stalk, threaten or assault Hafermann; not to contact her in any way; and to stay at least 100 yards away from her. (*Id.*)

Because of Hafermann's fame, the TRO received press coverage with articles appearing in celebrity news outlets. (RJN Exs. G-I.) Rothenberg did not communicate with any publicists, editors or news outlets about Mandel's threats of violence and stalking that formed the basis of the TRO. (Rothenberg Decl. ¶ 10.) He did not talk to editors, publicists or anyone in Mandel's professional circle regarding the TRO or the allegations therein—before or after the TRO was filed. (*Id.*) Civil filings are public records, available for all to see. Not surprisingly, entertainment news outlets keep their ears to the ground when it comes to celebrity restraining orders.

On February 15, 2018, the court held an evidentiary hearing on the TRO. (RJN Ex. E.) The court, concerned about potentially ruining Mandel's career, did not issue a permanent injunction. (*Id.* at 20:10-21:9.) But the court believed Hafermann over Mandel and ordered him to "stay away from her." (*Id.* at 21:10-13.) The court further ordered: "Don't go to her concerts. Don't go near her. Don't go near her home. Don't try to find out where she is living now with her fiancé. Don't call her. Don't have anything to do with her." (*Id.* at 21:26-22:2.)

In September 2018, the divorce court granted Hafermann's motion to set aside any obligation under the Decree to employ Mandel as her manager. (RJN Ex. F.)

### E. <u>Mandel's Allegations In The SAC</u>

Mandel claims that Rothenberg worked with the other defendants to concoct a false story about Mandel stalking Hafermann and threatening violence against her, as set forth in the TRO, as part of a grand scheme to ruin Mandel's career. (SAC ¶¶ 69, 80, 85-86.) Per the SAC, Rothenberg fabricated this story for multiple reasons: to "retaliate" against Mandel for refusing to renegotiate

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

the terms of the Stipulation with Hafermann; to justify Hafermann's subsequent termination of Mandel as her manager (and thereby allow Hafermann to avoid paying Mandel future commissions); and to create a fake news story that would divert attention from a separate news story about Hafermann's ex-boyfriend, Michael Hays ("Hays"), who had been engaging in unrelated efforts to extort Hafermann. (*Id.* ¶¶ 69, 85.)

Mandel claims that, in addition to being Hafermann's longstanding attorney, Rothenberg was also *his* attorney. (SAC ¶¶ 40.) Even though Mandel and Hafermann were on opposite sides of a divorce and a management agreement, Mandel claims he had no idea that Rothenberg represented Hafermann adverse to him; and that Rothenberg's conduct and communications on behalf of Hafermann, his client, violated fiduciary duties he owed to Mandel. (*Id.* ¶¶ 78.)

The SAC alleges seven meritless causes of action against Rothenberg:

- **Defamation (1st COA).** Mandel alleges that Rothenberg published false statements to news editors, publicists and other "industry professionals" both in the hours leading up to the TRO filing and in the weeks that followed. (SAC ¶¶ 80-88, 90-91, 93-96, 116-18.) Specifically, Mandel claims that Rothenberg badmouthed him to editors and publicists by echoing the allegations in the TRO—that Mandel was stalking Hafermann and threatening violence against her. (*Id.* ¶¶ 117.) As discussed below, communications about the TRO proceeding are both protected litigation activity and protected free speech in connection with a public issue. This conduct falls squarely under the anti-SLAPP statute.
- **Breach of Contract (10th COA) and Breach of Fiduciary Duty (11th COA).** Mandel alleges that Rothenberg was his attorney and acted as legal counsel to LLCs owned by Mandel and Hafermann. (SAC ¶¶ 39-41.) Mandel alleges that Rothenberg breached their "legal services contract" and his fiduciary duties by, among other things: "defaming [Mandel] to music industry professionals"; giving Mandel bad legal advice regarding the divorce settlement; and representing Hafermann adverse to Mandel. (*Id.* ¶¶ 194, 199.) "[R]epresenting Hafermann adverse to Mandel" refers to Rothenberg giving Hafermann legal advice about the terms of her divorce settlement (*id.* ¶ 50); and, on behalf of Hafermann, pressuring Mandel to renegotiate the terms of the Stipulation (*id.*). The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

defamatory statements are protected conduct. Legal advice and communications on behalf of a client are also paradigmatic protected activity.

- **Intentional Interference with Economic Relations (12th COA).** Mandel claims that Rothenberg interfered with Mandel's economic and contractual relationships with Hafermann and "third parties" by engaging in the same conduct underlying the other claims: badmouthing Mandel to industry professionals (including news outlets) by echoing the TRO allegations; and "representing Hafermann. . . adverse to Mandel's interest." (SAC ¶ 211.) Mandel's claim is also based on Rothenberg sending him a termination letter on behalf of Hafermann. (*Id.*)
- **Intentional Infliction of Emotional Distress ("IIED") (13th COA) and Negligent Infliction of Emotional Distress ("NIED") (14th COA).** Mandel claims that Rothenberg engaged in wrongful conduct that intentionally caused Mandel "extreme emotional distress." (SAC ¶¶ 233-36.) As with Mandel's other claims, these arise from protected activity: badmouthing Mandel by repeating the TRO allegations; sending a termination letter on behalf of Hafermann; giving Mandel bad legal advice about settlement during the divorce proceeding; representing other clients adverse to Mandel; and taking on legal clients who had been Mandel's management clients. (*Id.* ¶¶ 224, 233.)
- **Conspiracy (15th COA).** Mandel alleges that Rothenberg conspired with the other defendants, including his client Hafermann, "to accomplish unlawful and wrongful objectives." (SAC ¶ 240). He claims Rothenberg's unlawful conduct consisted of: "breaching extremely important fiduciary duties owed to his client Mandel"; "publishing false statements about Mandel"; "interfering with Mandel's 5-year employment agreement"; "terminating Mandel's employment on behalf of Hafermann"; and giving Mandel "fraudulent legal advice" (about settlement during the divorce proceeding). (*Id.* ¶ 246.) This claim rests on the same protected conduct as Mandel's other causes of action.

## III. <u>PROCEDURAL HISTORY / CALIFORNIA LAW APPLIES</u>

On September 18, 2018, Mandel filed his original Complaint in Utah state court against Hafermann, her assistant Vanessa Ostovich ("Ostovich") and Taylor. On June 14, 2019, he filed

the FAC, adding Rothenberg and Rothenberg, P.C. as defendants. The case was removed, and on June 3, 2020, transferred to this Court. [Dkt. 40.]

On July 2, 2020, Rothenberg filed an anti-SLAPP motion. [Dkt. No. 53.] In its November 30, 2020 Order, the Court applied California law to all claims against Rothenberg. [Dkt. 94.] The Court reasoned that California had the most significant relationship to the claims. [*Id.* at 15:10-21, 19:12-19, 20:24-26, 24:13-18, 24:14-19.]

The Court granted Rothenberg's motion in part, dismissing all but the breach of contract and breach of fiduciary duty claims, with leave to amend. [Dkt. 94.] The Court found that the breach of contract and breach of fiduciary duty claims suffered from the same deficiency: they failed to specify any actual conduct by Rothenberg; and, "as imprecisely pleaded," did not allow the Court to determine whether the alleged conduct was protected. [*Id.* at 20:11-21:6.]

The Court held that any amended complaint should recognize that "California law applies—and bars—many of the previously pled claims." [Dkt. 94 at 43:22-24.] The Court also cautioned Mandel that he "may not add any new claims (as opposed to amend previously pled claims) without further leave of court." [*Id.* at 43:24-25.]

## IV. LEGAL STANDARD

Under California law, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). In applying the anti-SLAPP statute, courts consider the pleadings and declarations stating the facts upon which the liability or any defense is based. *Id.* § 425.16(b)(2); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1289-90 (2008).

The anti-SLAPP analysis has two steps. *First*, defendants must make a prima facie showing that the claims "aris[e] from" protected activity; namely, "any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

SLAPP analysis . . . ." *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089 (2001).

The challenged claims need only arise in part from protected activities. *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307-08 (2001). "A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct . . ." *Salma*, 161 Cal. App. 4th at 1287; *see also Fox Searchlight Pictures*, 89 Cal. App. 4th at 308 ("[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under . . . one 'cause of action.'"); *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, No. 18-cv-034120-BLF, 2020 WL 1082764, at *3 (N.D. Cal. Mar. 6, 2020) (same).

*Second*, if the claims arise from protected activity, the burden shifts to the plaintiff to show, by "competent, admissible evidence," the probability he or she will prevail on the merits. *Roberts*, 105 Cal. App. 4th at 613-14. The plaintiff must also present competent, admissible evidence to overcome all of the defendant's privileges and defenses, including the litigation and fair reporting privileges. *See Comstock v. Aber*, 212 Cal. App. 4th 931, 953 (2012). If the plaintiff cannot make this showing, then the claim is dismissed and the defendant must be awarded attorneys' fees and costs. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821, 826 (2002), *superseded by statute on other grounds*; Cal. Civ. Proc. Code § 425.16(c)(1).

## V. PRONG ONE: THE CLAIMS ARISE FROM PROTECTED ACTIVITY

Mandel's SAC fares no better than the FAC. All the claims against Rothenberg still "arise from" protected activity under the anti-SLAPP statute. Section 425.16(e) defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as including: "(2) any . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law"; "(3) any . . . statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; and "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with . . . an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). The alleged conduct here is protected under all three subsections.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**A. <u>All Of Mandel's Claims Arise From Protected Litigation Activity</u>**

Courts have adopted a "fairly expansive view" of litigation-related activities within the scope of section 425.16. *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (2012). "[A] statement is 'in connection with' litigation under section [425.16(e)(2)], if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962 (2010) (citation omitted).

California's Supreme Court has explained that communications that are "preparatory to or in anticipation of the bringing of an action" are within the scope of section 425.16(e)(2). *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999) (citation omitted); *see also Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 940 (2018).

Moreover, section 425.16(e)(2) protects statements "to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1270 (2008); *see also Healy v. Tuscany Hills Landscape & Recreation Corp*., 137 Cal. App. 4th 1, 5 (2006) ("[I]t has been established for well over a century that a communication is absolutely immune from any tort liability if it has '"some relation"' to judicial proceedings." (citation omitted)); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) ("The fact that the communication was made to other private citizens rather than to the official agency does not exclude it from the shelter of the anti-SLAPP suit statute."). Here, the re-pled causes of action in the SAC arise from conduct that falls squarely under section 425.16(e)(2).

**1. <u>Rothenberg's Alleged Statements to News Editors and Publicists</u>**

Mandel alleges that, after the party on December 13, 2017, Rothenberg and the other defendants concocted a plan to "spread [a] fabricated story throughout Mandel's professional circle." (SAC ¶¶ 80.) Mandel claims that Rothenberg, acting on this plan, "provided notice to entertainment media outlets," editors and publicists regarding the allegations in the TRO in the hours before it was filed; and that he repeated the TRO allegations to various industry professionals in the weeks after it was filed. (*Id.* ¶¶ 80, 87, 95, 118.) According to Mandel, these statements mirror, verbatim, the allegations in the TRO. (*Id.* ¶ 91.) All of Mandel's seven causes of action

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

against Rothenberg are based on this conduct. (*Id.* ¶¶ 116-17, 194, 199, 211, 224, 233, 246.[1])

The Court already found that Rothenberg's allegedly notifying news outlets about the TRO proceeding and conspiring with the other defendants to publish false statements about Mandel are protected litigation activity under the anti-SLAPP statute. [Dkt. No. 94 at 15:23-16:25.]

Whether Rothenberg made these statements in the hours leading up to the TRO filing or in the weeks that followed (he did neither), they are protected speech under section 425.16(e)(2). *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1549 (2010) (alleged willful misrepresentation of lawsuit in letter to newspaper covered by anti-SLAPP); *Neville*, 160 Cal. App. 4th at 1264, 1270 (statement that "concern[s] the subject of the dispute" and "made in anticipation of litigation" is protected petitioning activity even though "litigation may not have commenced"); *Healy*, 137 Cal. App. 4th at 5-6 (informing interested parties about pending litigation was "unquestionably 'in connection with' judicial proceedings"). The alleged statements to publicists and editors (including news outlets) are protected by section 425.16(e)(2).[2]

**2. Rothenberg's Alleged Legal Advice to Mandel**

The SAC claims that Rothenberg was Mandel's attorney; and, during the divorce proceeding, advised him "regarding potential division of assets and settlement terms," and "that he [Mandel] needed to accept the proposed settlement terms." (SAC ¶¶ 55-56.) This alleged advice

---

[1] Even Mandel's breach of fiduciary duty claim is based on Rothenberg's "defaming [Mandel] to music industry professionals." (SAC ¶ 199.) Along the same lines, the breach of contract claim is based on Rothenberg's "breaching fiduciary . . . duties inherent in legal services contracts." (*Id.* ¶ 194.) By conflating the causes of action and attempting to muddy the SAC with allegations of breach of fiduciary duty, Mandel brings all of his claims within the ambit of section 425.16(e)(2).

[2] To the extent Mandel's new allegations are inconsistent with those in the FAC (i.e., publishing statements to news outlets after the TRO was filed (FAC ¶¶ 81-89) versus statements to "record executives, publicists, editors, and other music industry professionals who worked with Mandel . . . before a TRO was ever contemplated" (SAC ¶ 118), they are barred by the sham pleading doctrine. "[W]here factual allegations in an amended complaint are inconsistent with facts alleged in a prior complaint, a court need not accept the new allegations as true." *Polk v. Lattimore*, No. 1:12-cv-01156-DAD-BAM (PC), 2018 WL 2183877, at *3 (E.D. Cal. May 11, 2018), *report and recommendation adopted in part*, 2018 WL 5794519 (E.D. Cal. Nov. 5, 2018). A court "may, in fact, strike the changed allegations as 'false and sham.'" *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) (citation omitted). Mandel's inconsistent allegations, which *still* fall under the anti-SLAPP statute, should be stricken or, at the very least, disregarded. *Id.*

that Rothenberg gave Mandel—what the SAC calls "false" and "erroneous"—related to the divorce court proceeding in Utah and the potential settlement thereto. (*Id.* ¶¶ 78, 199, 224.) This conduct forms the basis of Mandel's breach of contract, breach of fiduciary duty, IIED, NIED, and conspiracy claims. (*Id.* ¶¶ 194, 199, 224, 233.)

The California Supreme Court has held that "counseling" a client in connection with a judicial proceeding is protected activity under the anti-SLAPP statute. *Briggs*, 19 Cal. 4th at 1115; *see also Thayer*, 207 Cal. App. 4th at 154. Rothenberg's alleged legal advice to Mandel in connection with the divorce proceeding constitutes per se protected activity under the anti-SLAPP statute. *Cabral v. Martins*, 177 Cal. App. 4th 471, 479-80 (2009) ("[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."); *Contreras*, 5 Cal. App. 5th at 412 (affirming order granting anti-SLAPP motion where claims against attorney arose out of advice to clients).

Rothenberg's alleged legal advice to Mandel is also protected as part of the settlement negotiations between Hafermann and Mandel. *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 114 (2017) ("[B]ecause settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2)."); *Thayer*, 207 Cal. App. 4th at 154 ("[L]egal advice and settlement made in connection with litigation are within section 425.16 . . . ."); *Rubin v. Green*, 4 Cal. 4th 1187, 1194-95 (1993) (settling clients' claims are acts in furtherance of protected activity).

**3. <u>Rothenberg's Alleged "Adverse Representation" of Hafermann</u>**

Mandel alleges that Rothenberg represented Hafermann's interests adverse to Mandel. (SAC ¶¶ 50, 78, 194, 199, 211, 233.) This allegation forms the basis for six of Mandel's claims (breach of contract, breach of fiduciary duty, intentional interference, IIED, NIED, and conspiracy). (*Id.* ¶¶ 194, 199, 224, 233.) The specific actions giving rise to Rothenberg's purported liability are all protected litigation conduct: (1) legal advice to Hafermann about the divorce settlement (*id.* ¶ 50); (2) "direct[ing]" Hafermann to wrongfully terminate Mandel as her

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

manager (*id.* ¶ 102); (3) sending a termination letter to Mandel on behalf of Hafermann in the midst of the TRO (*id.* ¶ 97); and (4) negotiating with Mandel on Hafermann's behalf regarding the divorce settlement ("pressur[ing] Mandel to change the terms of the [Stipulation]") (*id.* ¶ 50).

As set forth above, counseling a client in connection with a judicial proceeding and settlement negotiations is protected litigation activity. *Briggs*, 19 Cal. 4th at 1115; *Optional Capital*, 18 Cal. App. 5th at 114. Accordingly, Rothenberg's legal advice to Hafermann about the divorce settlement falls under section 425.16(e)(2).[3] Rothenberg's negotiations on Hafermann's behalf are also protected litigation conduct. *Optional Capital*, 18 Cal. App. 5th at 114; *Rubin*, 4 Cal. 4th at 1194-95 (settling clients' claims are acts in furtherance of protected activity).

Rothenberg's alleged legal advice to Hafermann about terminating Mandel as her manager and authoring the termination letter in the midst of the TRO filing is also quintessential protected conduct. After learning that Mandel was stalking and threatening violence against her, Hafermann filed a TRO and, at the same time, terminated Mandel as her manager. Rothenberg relayed the termination notice to Mandel on his client's behalf. (SAC ¶ 97.) This is what lawyers do. In essence, Mandel is suing Rothenberg for speaking on his client's behalf. Rothenberg's advocacy of Hafermann, adverse or otherwise, constitutes protected "communicative acts" performed by Rothenberg as part of his representation of Hafermann in a judicial proceeding. *Cabral*, 177 Cal. App. 4th at 479-80; *Thayer*, 207 Cal. App. 4th at 154; *Contreras*, 5 Cal. App. 5th at 412.

**B. <u>All Of Mandel's Claims Arise From Speech In Connection With A Public Issue</u>**

All seven of Mandel's claims stem from Rothenberg's allegedly publishing false statements about Mandel—that Mandel was stalking Hafermann and threatening violence against her—to entertainment publicists, editors and news outlets. (SAC ¶¶ 116, 194, 199, 211, 213, 224, 233, 246.) This is not only protected litigation conduct under section 425.16(e)(2); it is also protected

[3] Mandel alleges that Rothenberg provided legal advice to Hafermann about the divorce settlement and the terms of the parties' management agreement in an email dated October 24, 2017. (SAC ¶ 58.) At that time, issues related to the divorce and the Stipulation were still "under review" for purposes of constituting protected litigation activity under the anti-SLAPP statute. *See Lund v. Gifford*, No. B259366, 2016 WL 7031517, at *6 (Cal. Ct. App. Dec. 2, 2016) ("the fact a settlement had been reached, but not approved by the court" did not remove statements made after the settlement was reached "from the protection of section 425.16, subdivision(e)(2)").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

speech in connection with an "issue of public interest" under section 425.16(e)(3)-(4). For this reason alone, prong one is satisfied as to all of Mandel's claims against Rothenberg.

An "issue of public interest" is "*any issue in which the public is interested*." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (statements by employee to magazine about former employer, a prominent businessman, protected by section 425.16(e)(3)). This includes the affairs of celebrities and popular entertainment figures. *See Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007) (interview of a housekeeper named in Marlon Brando's will was protected because of the "public's fascination with Brando and widespread public interest in his personal life"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 899 (9th Cir. 2010) (claim by Paris Hilton against Hallmark for violating her right of publicity in a card arose from protected conduct because she was a topic of widespread interest). News media also constitutes a "public forum" for purposes of section 425.16(e)(3). *Nygard*, 159 Cal. App. 4th at 1038.

Indeed, even private conversations about issues of public interest fall within the ambit of section 425.16(e). *Averill v. Superior Court*, 42 Cal. App. 4th 1170, 1175 (1996) (private conversations by employee to employer concerning an issue of public concern were protected under section 425.16); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1546 (2005) (confirming Legislature's embrace of *Averill* in its 1997 amendment to section 425.16 and holding that "subdivision (e)(4) applies to private communications concerning issues of public interest").

The SAC concedes the public's interest in Hafermann. (SAC ¶ 17 (touting Hafermann as a Grammy-nominated singer-songwriter who spent weeks atop the Billboard charts).) Indeed, applying Mandel's logic, there would be no reason to "divert attention" from Hays' sordid and baseless stories by defaming Mandel if the public were not interested in Hafermann. (*Id.* ¶¶ 68-69, 80.) Rothenberg's alleged statements to publicists, editors and news outlets regarding Hafermann, a popular recording artist, and her ex-husband/manager are protected speech regarding an issue of public interest under section 425.16(e)(3)-(4).

**C. <u>Mandel's Conclusory "Breach Of Fiduciary Duty" Allegations Do Not Destroy The Protections Of The Anti-SLAPP Statute</u>**

Mandel peppers allegations of breach of fiduciary duty throughout his new pleading in an

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

attempt to overcome the anti-SLAPP statute. It doesn't work. As set forth above (*see supra*, Sections V.A-B), the gravamen of Mandel's claims—even the one labeled "breach of fiduciary duty"—is protected conduct. *See Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) ("The anti-SLAPP statute's definitional focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.")

Indeed, courts regularly hold that the anti-SLAPP statute applies to claims involving breach of fiduciary duty where those claims are based on protected activities. *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 811 (2015) (anti-SLAPP applied to claims for aiding and abetting breach of fiduciary duty where "specific acts of alleged wrongdoing" were litigation activities); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 673 (2005) (reversing order denying anti-SLAPP where malpractice and breach of fiduciary duty claims were based on petitioning activities); *Graham-Sult v. Clainos*, 756 F.3d 724, 736 (9th Cir. 2014) (breach of fiduciary duty claim arose from litigation activity). For the reasons set forth above, all of Mandel's claims are properly subject to an anti-SLAPP motion.

## VI. <u>PRONG TWO: PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY OF HIS BASELESS CLAIMS</u>

Because Mandel's claims against Rothenberg arise out of protected activity, the burden shifts to Mandel to establish through competent, admissible evidence "a probability that [he] will prevail on [his] claim[s]." Cal. Civ. Proc. Code § 425.16(b)(1). Mandel cannot meet his burden.

### A. <u>The Litigation Privilege Bars All Of Mandel's Claims</u>

Mandel's claims are all based on conduct that is protected by the litigation privilege, under Civil Code section 47(b). "[I]t has been established for well over a century that a communication is absolutely immune from any tort liability if it has '"some relation"' to judicial proceedings." *Healy*, 137 Cal. App. 4th at 5 (citation omitted). The only exception is for claims of malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 216 (1990), *as modified* (Mar. 12, 1990).

The litigation privilege has an "expansive reach" and a communication need only have "some relation" to an official proceeding for it to apply. *Rubin*, 4 Cal. 4th at 1193-94; *Costa v.*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

*Superior Court*, 157 Cal. App. 3d 673, 678 (1984) (all doubts must be resolved in favor of applying the privilege); *Pettitt v. Levy*, 28 Cal. App. 3d 484, 489 (1972) ("The publication need not be pertinent, relevant or material in a technical sense to any issue" so long as it has "some connection . . . to the proceedings").

The litigation privilege is not limited to statements made in court; counseling a client, pre-litigation communications, and settlement discussions are also covered. *See, e.g.*, *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006) (litigation privilege protects lawyer's act of counseling client); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 843-44 (2005) (reversing order denying anti-SLAPP where claims about statements during settlement negotiations were barred by litigation privilege); *Bergstein*, 236 Cal. App. 4th at 815 (privilege applies to "communicative activities of counsel . . . made in or in anticipation of judicial proceedings"). Accordingly, it is not limited to statements during proceedings "but may extend to steps taken prior thereto, or afterwards." *Rusheen*, 37 Cal. 4th at 1057. Nor is the litigation privilege "restricted to the actual parties to the lawsuit." *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (1992).

The litigation privilege "does not depend on . . . 'motives, morals, ethics or intent,'" and applies with equal force to both true and false communications. *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 107 (2018) (citation omitted). It is "absolute in nature." *Silberg*, 50 Cal. 3d at 215, 218 (rejecting any qualifications on the privilege or any "interest of justice" test).

Here, all seven claims against Rothenberg are based on Rothenberg's alleged statements to entertainment industry professionals (including news media) about the TRO proceeding. (SAC ¶¶ 116-17, 211, 224, 246.) As such, they are barred by the litigation privilege. *Healy*, 137 Cal. App. 4th at 5-6 (reversing denial of anti-SLAPP because litigation privilege protected defamatory statements regarding lawsuit); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 971 (2014) (reversing denial of anti-SLAPP because litigation privilege barred IIED claim based on conduct relating to request for TRO). Indeed, the Court already held that the litigation privilege applies to Rothenberg's purported statements to news outlets about the TRO. [Dkt. No. 94 at 17:12-23.]

Additionally, five of the claims—breach of contract, breach of fiduciary duty, IIED, NIED and conspiracy—are based on even more protected conduct: purported bad legal advice to Mandel

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

in connection with the divorce settlement. (SAC ¶¶ 224, 233.) And six of the claims (all but defamation) are also based on Rothenberg's legal advice to another client, Hafermann, in connection with the divorce settlement and the TRO ("representing Hafermann adverse to Mandel"). (*Id.* ¶¶ 50, 78, 194, 199, 211, 233.) The litigation privilege plainly shields Rothenberg's communications to his clients (both actual and alleged clients). All of his purported advice had a "logical relation" to the divorce and the TRO proceedings. *Silberg*, 50 Cal. 3d at 212.

There is more. Six of the claims (all but defamation) are also based on acts taken by Rothenberg on behalf of his client, Hafermann—sending Mandel a termination letter in the midst of the TRO proceedings (SAC ¶ 97); and negotiating the divorce settlement with Mandel ("pressur[ing] Mandel to change the terms of the [Stipulation]") (*id.* ¶ 50.) These communicative acts all bear "some relation" to the TRO proceeding and/or the divorce proceeding. As such, Mandel's claims all fail as a matter of law because they are barred by the litigation privilege.

**B. <u>The Fair Reporting Privilege Bars All Of Mandel's Claims</u>**

"The fair report privilege 'confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof.'" *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016) (citation omitted) (communications to news media about allegations in a complaint are covered by the privilege). *See also* Cal. Civ. Code § 47(d); *Peper v. Gannett Co., Inc.*, No. 2002061753, 2003 WL 22457121, at *7 (Cal. Super. Ct. Apr. 4, 2003) (dismissing intentional interference claims based on fair reporting privilege), *aff'd*, Nos. A102831, A103464, 2004 WL 2538839 (Cal. Ct. App. Nov. 10, 2004).

"'Fair and true' in this context *does not* refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect to what occurred in the judicial proceedings." *Kabateck*, 7 Cal. App. 5th at 434 (emphasis added). The pertinent questions is "the extent to which the attorneys' statements accurately conveyed the substance of the allegations made in the . . .complaint." *Id.*; *see also J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 101-05 (2016) (privilege protected firm press release about evidence presented at trial); *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 790 (2017) (privilege protected lawyer's email to press about allegations in client's malicious prosecution action).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Here, Mandel alleges that, in the hours leading up to the TRO filing, Rothenberg "provided notice to entertainment media outlets . . . that Mandel had made threats of violence." (SAC ¶ 95.) These are the same threats outlined in the TRO. (*Id.* ¶¶ 91.) Further, Mandel still alleges that Rothenberg notified news outlets about the TRO in the weeks after it was filed. (*Id.* ¶¶ 116-18.) Mandel still does not identify any actual communications to the press (there are none). Nor does he allege that Rothenberg misrepresented the substance of the TRO or any actions in the proceeding—only that the allegations in the TRO itself are false. (*Id.* ¶ 91.) Of course, this is belied by the trial court finding that Hafermann was credible and ordering Mandel to stay away from her.

Because Rothenberg's communications are protected by the fair reporting privilege, the claims upon which they are based fail. *Kabateck*, 7 Cal. App. 5th at 438 (affirming order granting attorney defendants' anti-SLAPP motion); *Argentieri*, 8 Cal. App. 5th at 794-95 (same).

**C. <u>The Agent's Immunity Rule Bars All Of Mandel's Claims</u>**

In California, a lawyer cannot be liable for conspiring with his own client unless he: (1) acts for his own advantage beyond his compensation as a lawyer; or (2) breaches an independent legal duty to the plaintiff. *Berg*, 131 Cal. App. 4th at 817-18.[4] As a result, conspiracy claims against lawyers are rarely viable and are used instead, as here, "as a tactical ploy." *Klotz v. Milbank, Tweed, Hadley & McCloy*, 238 Cal. App. 4th 1339, 1350 (2015). To prevent this abuse, California Civil Code section 1714.10 prohibits filing such an action without prior court authorization after an evidentiary showing of a probability of prevailing. *Id.*; *see also Flores*, 416 F. Supp. 2d at 909 ("Failure to seek such an order is a complete defense to the filing of any action for civil conspiracy, and may form the basis of a motion to strike."). The Ninth Circuit applies section 1714.10 in diversity cases. *See Raceway Props., LLC v. LSOF Carlsbad Land L.P.*, 157 F. App'x 959, 964 (9th Cir. 2005); *Shieh v. Ebershoff*, 15 F.3d 1089, at *3 (9th Cir. 1993).

Section 1714.10 applies to any claim that "derive[s] [its] vitality from incorporated

---

[4] As set forth below (*see infra*, Section VI.E.), Mandel cannot establish an attorney-client relationship with Rothenberg. But even if he could, such a relationship does not give rise to an "independent duty" within the meaning of section 1714.10. *See Klotz*, 238 Cal. App. 4th at 1351 (The "independent duty" exception to the statute requiring prefiling approval "obviously speaks to a relationship beyond that of attorney-client" (citation omitted)).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

conspiracy-based allegations," without regard to the label. *Berg*, 131 Cal. App. 4th at 836. Here, every claim against Rothenberg arises from his conspiring with Hafermann to undercut Mandel's business interests, to "fabricate[] [a] false story" about Mandel and publicize it. (SAC ¶¶ 85, 117, 211.) Conspiracy is the keystone of all of Mandel's claims against Rothenberg. Indeed, the SAC is replete with allegations of a "plan" or "meeting of the minds" between Rothenberg and his client, Hafermann. (SAC ¶¶ 59, 64, 69, 86.) These are precisely the conspiracy-based claims contemplated under section 1714.10. Mandel neither sought nor obtained the Court's prior authorization prior to filing. Thus, the claims fail as a matter of law. *Klotz*, 238 Cal. App. 4th at 1350-51; *see also Flores*, 416 F. Supp. 2d at 910.

**D. <u>The Defamation Claim Fails For Additional Reasons</u>**

**1. <u>The Defamation Claim Is Time-Barred</u>**

The defamation claim also fails because it is time-barred. California recognizes a one-year statute of limitations for defamation claims. Cal. Civ. Proc. Code § 340(c). Rothenberg's alleged statements to news outlets, publicists, editors and "other professionals" occurred in December 2017—18 months before Mandel brought his claim against Rothenberg in June 2019. As discussed in Rothenberg's concurrently filed Motion to Dismiss, allowing Mandel to proceed on these claims would permit the one-year statute of limitations for defamation claims to "be tolled indefinitely, perhaps forever." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1244, 1247 (2003) ("A cause of action for defamation accrues at the time the defamatory statement is 'published' . . . ."), *as modified* (Dec. 22, 2003). (Motion to Dismiss at 11:12-12:22.) The claim fails as a matter of law.

**2. <u>The Court's Order Prohibited New Causes Of Action</u>**

Moreover, the Court cautioned Mandel that, in amending the FAC, he "may not add any new claims (as opposed to amend previously pled claims) without further leave of Court." [Dkt. 94 at 43:24-25.] Mandel's newly pled defamation claim flouts the Court's instructions.

In the FAC, Mandel alleged that Rothenberg made defamatory statements to news outlets. (FAC ¶¶ 81-89.) Now, Mandel claims that Rothenberg also published defamatory statements to publicists (Carrie Tolles, Dennis Dennehy and Rio Viera-Newton, "among others"), "record executives" and "other music industry professionals." (SAC at ¶¶ 80, 118, 209.) For purposes of a

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

defamation claim, each purported repetition to a third party is a separate publication. *Shively*, 31 Cal. 4th at 1242. Each alleged repetition by Rothenberg "gives rise to a new cause of action for defamation." *Id.* Mandel did not seek leave of Court to plead these new causes of action. Accordingly, they should be stricken.

**E. <u>The Breach Of Contract And Breach Of Fiduciary Duty Claims Fail</u>**

The breach of contract and breach of fiduciary duty claims also fail for additional reasons:

***First***, to recover for breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008) (stating elements). Mandel cannot establish the existence of any contract between him and Rothenberg, because there is none.[5] (Rothenberg Decl. ¶ 6.) This is fatal to his breach of contract claim. *Wang & Wang LLP v. Banco Do Brasil S.A.*, No. 2:06-CV-00761-JAM-KJM, 2009 WL 530135, at *2 (E.D. Cal. Mar. 3, 2009) (granting summary judgment where plaintiff could not prove existence of contract); *Barragan v. Deutsche Bank Nat'l Tr. Co.*, No. CV 15-02614 DDP (FFMx), 2015 WL 3617104, at *4 (C.D. Cal. June 9, 2015) (dismissing breach of contract claim where there was no contract). Even if Mandel were able to establish a contract with Rothenberg, Mandel cannot show that he performed thereunder because he never paid for any legal services. (Rothenberg Decl. ¶ 6.) Because there is no legal or factual basis for this claim, it must be stricken.

***Second***, there was never an attorney-client relationship between Rothenberg and Mandel for a fiduciary duty to arise. "An attorney-client relationship is not created by the unilateral declaration of one party to the relationship. Rather, the relationship can only be created by contract, express or implied." *Koo v. Rubio's Rests., Inc.*, 109 Cal. App. 4th 719, 729 (2003) (citation omitted); *see also Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007). Mandel cannot show he entered any contract with Rothenberg, signed any engagement letter for Rothenberg's services, received any invoices in connection with services Rothenberg rendered, or

[5] Mandel's failure to plead the necessary elements of a contract with Rothenberg is also addressed in Rothenberg's concurrently filed Motion to Dismiss. (*See* Motion to Dismiss at 17:13-18:23.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

paid Rothenberg for any services he rendered. (Rothenberg Decl. ¶ 6.) That's because Rothenberg never represented him. (*Id.*) They were both service providers for Hafermann, working hand-in-hand to benefit their mutual client. (*Id.* ¶ 8.) Indeed, at all relevant times, Rothenberg represented Hafermann adverse to Mandel. (*Id.* ¶ 9.) That Mandel may have incidentally benefited from Rothenberg's work as Hafermann's lawyer does not give rise to a fiduciary duty. *See Zenith Ins. Co.*, 148 Cal. App. 4th at 1008 ("Even if the attorney's representation could *incidentally* benefit the claimant, that does not sufficiently satisfy [the requisite intent].").[6]

Because the only factual basis alleged for a fiduciary relationship between Mandel and Rothenberg is the attorney-client relationship (SAC ¶ 198), the breach of fiduciary duty claim fails. *Traverso v. Eller Media Co.*, No. C 97-1254 SI, 2002 WL 467717, at *6 (N.D. Cal. Mar. 25, 2002) ("The existence of a fiduciary relationship is, self-evidently, an essential element of a cause of action for breach of fiduciary duty."); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1558 (2007) (demurrer properly sustained without leave to amend where plaintiffs failed to demonstrate facts supporting fiduciary relationship).

***Third***, the breach of contract and breach of fiduciary duty claims are essentially claims for legal malpractice; they are based on Rothenberg's alleged provision of legal services to Mandel. Accordingly, they are time-barred under the one-year statute of limitations. Cal. Civ. Proc. Code § 340.6 (all actions, other than actual fraud, based on an attorney's alleged wrongful act or omission must be brought within one year). Mandel claims he was "blindsided" by Rothenberg's breach of their "legal services contract" and Mandel's fiduciary duties in December 2017, but he did not sue him until June 2019. Mandel cannot circumvent the one-year limitations period by couching his claims as breach of contract and breach of fiduciary duty when they arise from the alleged provision of legal services. *A&T Mobility LLC*, No. 2:13-CV-00007-KJM-DB, 2017 WL 4340198, at *3. As discussed in the concurrently filed Motion to Dismiss, these claims should have

[6] Even assuming arguendo that Mandel owned part of the LLCs (another claim for which there is no evidence), Rothenberg's representation of the LLCs *still* would not create a fiduciary duty to the Mandel "with respect to personally-held rights." *Sprengel v. Zbylut*, 40 Cal. App. 5th 1028, 1047 (2019) (status of 50% member of LLC did not create implied attorney-client relationship with LLC's lawyer).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

been brought within one year; they are untimely and are barred. (Motion to Dismiss at 14:18-17:12.)

### F. Mandel's Interference Claim Is Legally Defective

The Twelfth Cause Action for "intentional interference with economic relations" alleges that Rothenberg interfered with Mandel's economic and contractual relationships with Hafermann and "third parties" by: (1) representing Hafermann adverse to Mandel (i.e., giving her legal advice about the divorce settlement, giving her legal advice about terminating Mandel as her manager, and sending a termination letter on her behalf); and (2) publishing defamatory statements about Mandel. (SAC ¶ 211.) Based on these allegations, it remains unclear whether Mandel is asserting a claim for intentional interference with contractual relations or intentional interference with prospective economic advantage. Either way, he cannot show a probability of prevailing.

#### 1. Rothenberg's Advice to Clients Cannot Be a Basis for Interference

As an attorney advising Hafermann (or other clients Harding and Johnson), Rothenberg cannot be liable for interference with Mandel's "economic and contractual relationships." *Schick v. Lerner*, 193 Cal. App. 3d 1321, 1329 (1987) ("[A]bsent extraordinary circumstances, an attorney may not be held liable for urging a client to breach a contract with some third party."); *L.A. Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982). This privilege applies equally to claims for intentional interference with prospective economic advantage. *L.A. Airways*, 687 F.2d at 323 n.1. "[P]ublic policy dictates that attorneys must remain free to counsel their clients without fear of subjecting themselves to liability as a result of the proper discharge of their professional obligations." *Schick*, 193 Cal. App. 3d at 1329.

Here, Mandel's claim is based on Rothenberg simply being an attorney, acting on his clients' behalf and giving them legal advice. As a matter of law, this cannot form the basis of an interference claim. *See Schick*, 193 Cal. App. 3d at 1329 ("Any rule to the contrary would constitute a serious impairment to the attorney-client relationship, and a resulting deleterious effect on the administration of justice," (citation omitted)).

#### 2. Mandel Cannot Show "Independently Wrongful" Conduct

To the extent Mandel is asserting a claim for intentional interference with prospective

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

economic advantage, it is insufficiently pled; and facts sufficient to cure its deficiencies do not exist. This tort requires among other things, a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003). With respect to this element, the plaintiff must show defendant's conduct was independently wrongful, meaning "it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159. The conduct must be wrongful by some legal measure other than the fact of interference itself. *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007).

Mandel cannot show that Rothenberg's alleged conduct—providing legal advice to his clients or notifying news editors and publicists about issues set forth in the TRO—is unlawful by any determinable legal standard. Because Mandel cannot show a probability of success on this claim, it should be stricken. *Contemporary Servs. Corp.*, 152 Cal. App. 4th at 1060 (affirming order granting anti-SLAPP motion where prospective economic advantage claim could not be based on conduct sufficient to prove plaintiffs' other alleged tort claims).

**G. <u>Mandel's Claims For IIED And NIED Fail</u>**

**1. <u>There Is No Evidence of Extreme and Outrageous Conduct</u>**

A claim for IIED only lies if a defendant's conduct was "extreme and outrageous." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (citation omitted). "[I]t is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal . . . or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (citation omitted).

Nothing in the SAC—assuming, *arguendo*, that Mandel could substantiate his allegations—even comes close. *See Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1129 (1989) (supervisor repeatedly stating plaintiff was a senile liar in presence of others not outrageous); *Unterberger v. Red Bull N. Am., Inc.*, 162 Cal. App. 4th 414, 423 (2008) (termination of business relationship not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

outrageous); *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 748 (2002) (attorney threatening criminal prosecution not outrageous). Rothenberg's legal advice to his client hardly qualifies as "utterly intolerable in a civilized community." This claim should be stricken.

**2. Mandel Cannot Show That Rothenberg Owed Him a Special Duty**

There is no independent tort of negligent infliction of emotional distress in California. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element. *Id.* at 1073. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).

Mandel does not allege a sufficient duty, nor can he. Rothenberg did not have a special relationship with Mandel (such as doctor-patient) where he assumed any duty.[7] Rothenberg's alleged breaches could not have possibly threatened any physical injury to Mandel.

Even if Mandel could establish some other legal duty (there is none), this would still be insufficient. A lawyer owes many duties to his actual clients, but emotional tranquility is not one of them. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 472 (2003) (attorney's duty to his client "generally is to protect economic interests"). Although it "may be foreseeable that a client . . . will suffer emotional distress," a lawyer generally "does not assume an obligation to protect the client's emotional state." *Id.* at 472-73. This claim fails as a matter of law.

**H. Conspiracy Is Not An Independent Cause Of Action**

Finally, Mandel's conspiracy claim fails because it is not an independent cause of action.

---

[7] Cases where courts allow plaintiffs to pursue this type of claim involve either a special relationship between plaintiff and defendant or a breach that threatens physical injury. *See, e.g.*, *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 930-31 (1980) (doctor misdiagnosed plaintiff's wife with syphilis); *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 590-91 (1989) (hired therapist sexually molested plaintiff's sons); *Potter*, 6 Cal. 4th at 985 (company's unlawful disposal of toxic waste caused plaintiff to develop a fear of cancer after ingesting contaminated water).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11, 514 (1994); *Dean*, 21 Cal. App. 5th at 101 n.4. "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Applied Equip. Corp.*, 7 Cal. 4th at 511. "[T]ort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.*

Because Mandel cannot prevail on any of the underlying tort claims, the conspiracy claim necessarily fails. *Kenne*, 230 Cal. App. 4th at 969 ("[Mandel's] failure to show a probability of success on any of the underlying tort claims therefore bars [his] conspiracy claim as a matter of law."); *Dean*, 21 Cal. App. 5th at 101 n.4 (affirming order granting anti-SLAPP and striking conspiracy claim where plaintiffs failed to show probability of prevailing on underlying torts of defamation and tortious interference); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 590 (2003) (affirming order granting anti-SLAPP and striking conspiracy claim where plaintiffs failed to show probability of prevailing on underlying breach of fiduciary duty claim).

## VII. THE COURT SHOULD GRANT THE MOTION WITH PREJUDICE

Mandel is out of second-chance opportunities. Allowing Mandel "to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading" would "completely undermine the statute." *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001). The Court should grant this Motion with prejudice. *Pistoresi v. Madera Irrigation Dist.*, No. CV-F-08-843-LJO-DLB, 2009 WL 256755, at *13 (E.D. Cal. Feb. 3, 2009) (dismissing SAC with prejudice where "amended complaint [was] again subject to anti-SLAPP dismissal"); *see also Harper v. Lugbauer*, No. C 11-01306 JW, 2012 WL 1029996, at *6 (N.D. Cal. Mar. 15, 2012) (granting anti-SLAPP with prejudice where plaintiff did "not have a reasonable probability of prevailing as to any of the causes of action"), *aff'd*, 709 F. App'x 849 (9th Cir. 2017).

## VIII. CONCLUSION

For the foregoing reasons, Rothenberg respectfully requests the Court grant the Motion in its entirety and award Rothenberg reasonable attorneys' fees and costs pursuant to further motion.

DATED: February 3, 2021

MILLER BARONDESS, LLP

By: ______________________________
A. SASHA FRID
Attorneys for Defendants
PAUL ROTHENBERG and ROTHENBERG, P.C.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

494916.4
37
Case No. 3:20-cv-03668-JSC
SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT; AND REQUEST FOR ATTORNEYS' FEES AND COSTS